## THE MARYLAND TELEPHONE & TELEGRAPH COMPANY *v.* SAMUEL H. RUTH.

*Placing of telegraph pole in private alley—Right of abutting owner to cut down pole unlawfully erected—Notice to remove—Injury to transformer on pole—Estoppel—Rights of owner of leasehold lot binding on alley.*

The planting of a pole to support telegraph or electric wires in a private alley, the title to which either fee or lease-hold, is in the abutting owners, is a trespass, and an unlawful appropriation of private property, unless the right to place the pole there has been acquired by contract or by condemnation.

When a pole has been so unlawfully placed and its erection interferes with the proper use of the alley by the abutting owner and he gives the party erecting it, notice to remove the same, then, if not removed within a reasonable time thereafter, such owner is authorized to cut the pole down in a peaceable manner.

When there is a leasehold estate for ninety-nine years in a private alley, the owner of the reversion has no right to authorize the erection of telegraph poles in the alley against the prohibition of the owner of the leasehold estate who is in possession of the premises.

When a lot is described in the conveyance as binding on an alley owned by the grantor, the grantee acquires title to the centre of the alley subject to its use as an alley.

Defendant owned a leasehold lot extending to the centre of a private alley laid out for use in common with the property abutting thereon. Plaintiff, a telegraph and electric light company, asked the defendant to permit the erection in the alley back of his lot of a pole for wires. Defendant refused to give this permission, but the company nevertheless erected a tall pole in the part of the alley owned by the defendant, and its position there interfered with defendant's use of the alley. Counsel for the defendant notified the company that if they did not remove the pole, he would apply for a mandatory injunction requiring such removal. After this notice, the company attached cross-arms and a transformer to the poles. Defendant's counsel notified the company that the equity proceedings would be abandoned, and that if the company did not promptly take down the pole, the defendant would do so himself. No reply was made to this communication and the defendant, six days afterwards, cut the pole down in a peaceful manner, but in so doing, the transformer was injured. Plaintiff company then brought this action to recover damages. *Held,* that under these circumstances, the defendant had a right to cut the pole down.

*Held*, further, that in view of the nature of the trespass committed by the plaintiff it has no right to complain of the injury to the transformer.

*Held*, further, that the defendant was not estopped by the filing of the bill in equity from abating the nuisance himself, since the plaintiff was notified of the abandonment of the equity suit and that the defendant would remove the pole if the plaintiff did not do so.

*Decided December 6th, 1907.*

Appeal from the Superior Court of Baltimore City (STOCKBRIDGE, J.)

*Plaintiff's 1st Prayer.*—The plaintiff prays the Court sitting as a jury to rule as a matter of law that as the pole of the plaintiffs, together with the appliances attached thereto, mentioned in the evidence, was placed in the alley in the rear of the property 212 North Fulton avenue, in order that the plaintiff might serve electric lights to its patrons living on the same side of Fulton avenue and in the same block with the defendant, and as such act of the plaintiff did not interfere with the reasonable and necessary use by the defendant of said alley for the purposes for which it was granted, then the verdict should be for the plaintiff for such damages as it sustained by reason of the acts of the defendant in cutting down said pole and in the destruction of the appliances thereon and attached thereto. (*Refused.*)

*Plaintiff's 2nd Prayer.*—The pliantiff prays the Court sitting as a jury to rule as a matter of law that if it shall find as matter of fact that the pole of the plaintiffs together with the appliances attached thereto, mentioned in the evidence, was placed in the alley in the rear of the property 212 North Fulton avenue, in order that the plaintiff might serve electric lights to its patrons living on the same side of Fulton avenue and in the same block with the defendant, and if it shall further find as a fact from the evidence that such act of the plaintiff did not interfere with the reasonable and necessary use by the defendant of said alley for the purposes for which it was granted, then the verdict should be for the plaintiff for such damages as it sustained by reason of the acts of the defendant

in cutting down said pole and in the destruction of the appliances thereon and attached thereto. (*Granted.*)

*Plaintiff's 7th Prayer.*—The plaintiff prays the Court to rule as a matter of law that the uncontradicted evidence in this case shows (1) that the defendant in cutting down the pole in question and in cutting the wires strung upon the same, did so in a skillful and careful manner, (2) and that the transformer upon the said pole could have been removed therefrom without damage to said transformer by the use of ordinary care and skill, (3) and that as the uncontradicted evidence in the case further shows that no precautions whatever were taken by the defendant to remove the transformer from the pole in question before said pole was cut down, by reason whereof said transformer was damaged, the plaintiff is entitled to recover the damage done to such transformer, although the Court sitting as a jury may find from the evidence that the plaintiff erected the pole in the alley in the rear of the premises of the defendant without authority or warrant in law. (*Refused.*)

*Plaintiff's 8th Prayer.*—If the Court, sitting as a jury, finds as a fact that the erection of the telephone pole and appliances described in the evidence were not an obstruction of the use of the alley in the rear of the defendant's property, that is, such as interfered with the reasonable and proper enjoyment by the defendant of said alley, then the defendant was guilty of a trespass in cutting down said pole and appliances, and the plaintiff is entitled to a verdict for the amount of damages sustained by it, by reason of the cutting down and destruction of said pole and appliances. (*Refused.*)

The cause was argued before BOYD, PEARCE, SCHMUCKER and BURKE, JJ.

*Frank Gosnell* and *Jesse Slingluff*, for the appellant.

The appellee did not own the bed of the alley in the rear of his premises, No. 212 North Fulton avenue, nor has he any rights there other than those expressly given him by his deed.

The Act of 1892, chapter 684, was only intended to apply
when the whole estate in the land described as bounding on
a street or highway was being conveyed; and even if the Act
does apply to leasehold estates, it would not affect that of the
appellee, for the character of his rights in the alley are partic-
ularly defined and qualified when they are stated in the deed
to be "*with the use thereof in common.*" That is, he has the
right to a reasonable use of the alley along with other owners
of property bounding thereon. It is submitted, that the ap-
pellee having only a right of user in the alley, the planting of
a pole in the same was not an unreasonable interference with
his rights therein, and that is shown by his willingness to have
the pole erected in the alley, not in the rear of his property,
but in the rear of that of his neighbors therefore the mainten-
ance of the pole in the alley was not a nuisance, but was such
cause of the same for the benefit of the owners of property
bounding thereon as they were legally entitled to.

Even if the appellant had received no permission to erect its
pole in the alley in the rear of the appellee's property and was
a trespasser, and the maintaining of the pole there was a nuis-
ance, nevertheless, in removing the pole and abating the nuis-
ance, the appellee was obliged to use reasonable care to see
that a minimum amount of damage was done the appellant's
property; and if the appellee neglected to take such precau-
tions as would accomplish this result, he is liable to the plain-
tiff in damages.

In *Manning* v. *Brown*, 47 Md. 506, the Court, in constru-
ing the *Statute of* 5 *Rich. II*, ch. 8, said, that the owner of real
property, having a right of re-entry, may enter peaceably upon
one who is in possession without right, but concluded the opin-
ion as follows : "If in effecting the entry and clearing the pos-
session there be unnecessary force used, or any *want of reas-
onable care*, whereby *injury be done* the person or the *goods of
the occupant*, an action may be sustained for such injury."

As the above is the law, had appellant planted the pole in
the *yard* of the appellee *a fortiori* it must be so as the pole was
in the alley where the appellee's right was merely to use the

same in common with others.   It would have been a simple matter for the appellee to have lifted and lowered from the pole the transformer, and this could have been done without any extraordinary appliances, a rope being sufficient for the purpose; but notwithstanding the fact that an expert was at hand assisting the appellee in cutting the deadly electric light wires, not the slightest effort was made to protect the transformer from injury.   And it would seem that instead of.reducing the damages the appellee endeavored to enhance them and do as much harm to the appellant as he possibly could; and we, therefore, say that for such gross wantonness and recklessness, the appellee should be made to suffer in damages.

The appellee had no right to take the law in his own hands and chop down the pole.   The proper course for him to have pursued, was, under all the conditions existing, to prosecute the proceeding instituted by him in the Circuit Court, the rights of the parties having been submitted to that Court, and it having jurisdiction to determine them, and to grant relief to him, should he be legally entitled thereto.   *Frostburg* v. *Hitchins*, 99 Md. 627; *New Windsor* v. *Stocksdale*, 95 Md. 196; *Joyce on Nuisances*, sec. 374.

The right of the appellee to compel the appellant to remove the pole in question, having been submitted to a Court of equity by a bill for a mandatory injunction, *which proceeding is still pending*, the appellee was wholly unjustified in the course he subsequently pursued.

The law is that when the jurisdiction of a Court of equity has been invoked to decide matters in dispute, the persons submitting such matters to the Court are bound to await the determination of the same ; it was the proper tribunal to decide the rights of the parties, and if, after having invoked its aid, and submitted to its jurisdiction, such parties then, in disregard of their action in so submitting the matter in controversy to the Court, attempt and do take the redress of the wrongs complained of in their own hands, then they are acting without justification in law, and should be made to suffer the consequences of their wrongful act.

If the appellee had two remedies open to him for the re-
dress of his supposed wrongs, namely, the common-law rem-
edy, which gives the right to persons to abate nuisances under
certain conditions ; and, secondly, their right to submit their
wrongs to a Court of competent jurisdiction and have such
Court take appropriate action for their relief, and they choose
the latter, then they have elected which remedy they would
take, and they must await relief from that source.  *American
Furnishing Co.* v. *The Town Bateville*, 139 Ind. 79.

The Court erred in overruling the appellant's special excep-
tions to its (the Court's) ruling in lieu of the appellee's second
and fourth prayers, among other reasons especially because
there is no evidence in the case that a sufficient time had
elapsed after notice from the appellee within which the appel-
lant could have removed the pole.   In his letter of April 7th,
1906, Mr. Semmes, appellee's counsel, states, referring to the
action taken by the appellee—we again quote from the letter :
"Unfortunately I think he went into Court by filing a bill.
However, *he proposes to abandon this proceeding and* take such
action as I generally advise to bring the Telephone Companies
to terms." The proceeding referred to, which he intended to
abandon *and then resort to other remedies*, was pending on the
day the pole was cut down, and had not been dismissed at the
time of the trial of this case.

The appellant certainly had a right to take the appellee at
his word and assume that no action would be taken toward
removing the pole until the equity proceedings then pending
had been dismissed, and, moreover, we contend that it cannot
be said that the appellant had received notice that the appellee
intended to remove the pole when a condition to be pereformed
by him prior to taking such action had not been done. *Frost-
burg* v. *Hitchens* (*supra*), 629.

No time had elapsed within which the appellant could have
removed the pole, and, therefore, the Court's ruling, based
upon the theory that the pole was not removed until after the
lapse of a reasonable time, was improperly granted, and the
appellant's special exception thereto should not have been
overruled.

The appellant being a public service corporation owes a duty to the public, which was in this case to furnish it with electric light service, and in order to perform this duty in this instance it was necessary for it to erect a pole in the rear of the appellee's premises.

The appellant had the right to condemn an easement to erect its pole in the alley in the event of its failure to obtain the consent of the necessary parties, and possessing the right of condemnation, would have been entitled to an injunction restraining the appellee from interfering with the pole in question until it could proceed to condemn the rights necessary for its purposes. *Balto. and Hanover R. R. Co.* v. *Algire*, 65 Md. 340; *Balto. and Hanover R. R. Co.* v. *Algire*, 63 Md. 319; *Winslow* v. *B. & O. R. R.*, 188 U. S., at p. 659.

The appellee, therefore, went beyond the bounds of the law when he undertook to redress his alleged wrong outside of the Courts. His conduct was not justifiable by the law, and he should be made to suffer for his rash act; and especially should this be so in the present case, where the act complained of was committed after he had actually sought the intervention of a Court of equity to determine the respective rights of himself and the appellant.

*John E. Semmes* and *Jesse N. Bowen*, for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appellant sued the appellee in the Superior Court of Baltimore city for damages for cutting down a telephone pole which it had erected on a private alley in the rear of his residence. The defendant filed the general issue pleas and the case was tried before the Court without a jury. The trial resulted in a judgment for the defendant and the plaintiff appealed. The record contains but one bill of exceptions which is to the Court's action on the prayers. The facts appearing from the record are substantially as follows.

The appellee and his wife Cora E. Ruth owned as tenants in common in 1906 a leasehold estate, renewable forever, sub-

ject to a redeemable ground rent created by a lease from William Penrose in 1903, in their residence known as No. 212 North Fulton Avenue in Baltimore City. The lot on which the house stood was 14 feet front by 90 feet deep to a 10 foot private alley of which it was entitled to the use in common by the express terms of the lease. The rear end of the lot was described in the lease as "running southerly on the east side of said alley." That form of description must be construed, under the Act of 1892, Chap. 684, to have passed to the lessee and those claiming under him the title of the lessor to the centre of the alley subject to its use in common as an alley there being in the lease, so far as the record shows, no reservation to the lessor of all of the title to the alley.

In the latter part of February, 1906, The Telephone Company, through one of its engineers, applied to Ruth and his wife at their residence for permission to erect in the alley back of their lot a pole for telephone and electric light wires. The permission asked for was positively refused by both Ruth and his wife. Nothwithstanding this refusal the company on March 2nd, 1906, when according to the testimony of Ruth and his wife they were both absent from the premises, erected on the alley immediately adjacent to their lot a tall pole, sixteen inches in diameter at its base, and subsequently attached to the upper part of it cross arms and hung a transformer and strung wires thereon. The top of the pole as erected and the cross arms projected over Ruth's lot.

When Ruth came home and saw the pole in position he at once employed as his counsel James Fluegel, Esq., who on his behalf first by telephone and then by letter demanded of the Company that it remove the pole and notified it that if it did not promptly do so he would apply to equity for an injunction to compel its removal. The Company made no reply to this letter but on March 14th, its employees so straightened the pole as to practically remove the projection of its top and cross arms over the Ruth lot but permitting it to remain standing in its original position in the alley adjacent to the lot. In the meantime Ruth filed the bill for the injunction and the company answered it denying his right to relief.

Ruth then employed as counsel John E. Semmes, Esq., who on April 7th, 1906, wrote at length to the Company, in his behalf, calling its attention to its attitude and conduct in reference to this pole and informing it that Ruth intended to abandon his equity proceeding and remove the pole himself unless the Company promptly took it away, and requesting a reply to the letter without delay. The Company having made no reply to this letter, Ruth had the pole cut down on April 13th, and on the next day Mr. Semmes as his counsel notified the Company of the fact and requested it to remove the pole which was then lying in the alley, offering at the same time to remove it himself if the Company wished him to do it. There is no evidence that any disturbance or breach of the peace was caused by cutting down the pole and it was stated in the argument of the appeal without contradiction that the wires had been cut by an expert and tied up so that they would not hurt any one and the pole chopped down by competent men in a careful manner under the direction of Mr. Semmes. No effort was made to lower the transformer from the cross-arms of the pole before it was cut down and that appliance was badly injured by falling to the ground with the pole. The evidence shows that the transformer consisted of an iron box, and its contents, weighing from 150 to 200 pounds and costing about $45. It was fastened by hooks or bolts to the cross-arm near the top of the pole and, although the employees of the company generally use a block and tackle to raise and lower transformers, those weighing not more than this one could be and frequently were handled by the use of a rope alone.

Mr. Penrose, the owner of the reversion in fee in the Ruth lot, testified that the company had also applied to him for permission to erect the pole and that he had declined to give it. On cross-examination he admitted that he may have said to the plaintiff's counsel that he "didn't give permission for the pole to be there, that he didn't want to get mixed up in it and didn't care one way or the other."

There was evidence in the record tending to show that the presence of the pole at the rear of defendant's lot interfered

materially with the use of the alley by him and his family and also evidence of an opposite tenor.

At the close of the testimony the plaintiff offered eight prayers and the defendant offered four. The Court granted the plaintiff's second and fourth prayers and rejected the others, and all of the defendant's prayers and in lieu of the defendant's second and fourth prayers made a ruling of law as follows:

"The Court rules as a matter of law that if the Court sitting as a jury finds that the alley in the rear of the premises of the defendant was a private alley, laid out for the benefit of the property of the defendant and other property abutting thereon, and that the plaintiff without a permit and without permission from any one possessing authority to grant such permission, placed in the said alley upon that portion of it binding upon the lot of the defendant a pole, and that the erection of the said pole by the plaintiff interfered with or tended to interfere with the necessary, reasonable and proper use of the said alley by the defendant for the purpose for which the said alley was laid out; and if the Court, sitting as a jury shall further find, that the defendant gave the plaintiff notice to remove the said pole, and that after the lapse of a reasonable time after such notice had been given, the said pole was not removed, and that then the defendant proceeded to remove the said pole by cutting the same down, then and in that event the plaintiff is not entitled to recover."

This ruling of the learned Judge below in our opinion correctly stated the law of the case. The erection of the pole by the company under the circumstances set forth in the evidence and required by the Court's instruction to be found as matter of fact was in defiance of the rights of the owners of the Ruth lot and constituted an unlawful invasion of and trespass upon their land. *Broome* v. *N. Y. & N. J. Tel. Co.*, 42 N. J. Eq. 141, approved in *Ches. & Pot. Tel. Co.* v. *Mackenzie*, 74 Md. 47.

Our predecessors in *American Tel. & Tel. Co.* v. *Pearce*, 71 Md. 535, and *Mackenzie's case, supra*, defininitely decided that planting telephone or telegraph poles along a public highway

or a railroad right of way for other than railroad use, in the country where the title of the abutting owner runs to the centre of the road subject to the right of way, is an appropriation of private property and is unlawful unless the right to do so has been acquired by contract or condemnation. The same principle applies with equal force to the planting of poles in a city on a private alley such as the one in this case where the title of the abutting owner extends to the centre of the alley; although a different principle would control the erection of poles on the public streets of the city whose beds are owned by the municipality. The rule is the same whether the title of the abutting owner be a leasehold or a fee. *Shipley* v. *Westn. Maryland R. R. Co.*, 99 Md. 115.

The maintenance of the pole in its position in the alley, if it resulted in the interference with the use of the alley by the defendant required by the Court's instruction to be found from the evidence, constituted a nuisance, interfering with his rights, and he was legally authorized to abate it provided he did so in such manner as not to disturb the public peace or put in peril innocent third persons or their property. *Wood on Nuisances*, 318; *A. & E. Ency.*, vol. 1, p. 79, *et seq.*; *Day* v. *Day*, 4 Md. 270; *Turner* v. *Holztman*, 54 Md. 157.

If the nuisance thus created by the company be regarded as a private one the defendant had a right at common law to abate it without committing a breach of the peace. If on the other hand it be treated as a public nuisance the case falls within the proposition asserted by this Court in *Turner* v. *Holtzman, supra*, where we said "Without stopping to inquire whether any one whose rights are not injured or interfered with by a public nuisance may abate it, about which there is some conflict in the decisions, there can be no doubt whatever that any person whose rights are injured or interfered with may abate it, provided its abatement does not involve a breach of the peace." The evidence in the present case shows that no breach of the peace was caused by cutting down the pole nor was any injury to third persons or their property caused thereby. It does appear that one or more of the cross arms on the pole were

broken when it fell and the transformer was much injured, but we do not think that, in view of the nature of the trespass committed by the company in erecting these structures, it is entitled to complain of the loss thus inflicted on it. The company was armed with the power of condemnation of an easement for the erection of the pole and if under those circumstances it proceeded forcibly and in entire disregard of the defendant's rights to erect it so as to injure and annoy him it cannot expect the law to be too strictly applied to him in its favor when he without any breach of the peace cut the pole down. Not only did the company commit a trespass in erecting the pole but it proceeded to attach to it the cross-arms and transformer after a definite and positive notice from the defendant to remove the pole. The transformer was a heavy object suspended high in the air, the removal of which would have been difficult for, and might have been dangerous to, any one attempting it without previous experience in that particular class of work. The interest of the party menanced by a nuisance should govern in determining the degree of care and expense to be observed in protecting from injury the objects constituting the nuisance during their removal by him. *McKeesport Saw Mill Co.* v. *Penna. Co.,* 122 F. R. 184.

In granting the plaintiff's fourth prayer the Court ruled that the defendant was liable for not only actual but also examplary damages if it found from the evidence that he had acted in a wanton and reckless manner in removing the pole and its appliances. That was as favorable a statement of the law as the plaintiff was entitled to have upon that branch of the case.

The plaintiff's rejected prayers, except the fifth and sixth, were based upon hypotheses plainly inconsistent with the Court's rulings and do not require special notice from us. The fifth prayer asserted the proposition that even if the defendant had the right to remove the pole he was guilty of a trespass in cutting it down during the pendency of his equity suit for a mandatory injunction to require the company to remove it. This prayer and the discussion of it in the appellant's brief rest mainly upon the doctrine of estoppel. It is contended,

that the company was entitled to take the defendant at his word and suppose that no action would be taken toward removing the pole until the equity proceedings had been terminated. The fundamental element of an estoppel is that the party sought to be estopped has said or done something in reliance on which the person, in whose favor the estoppel is invoked, has acted or relied to his prejudice. That element is not found in the present case. The company was not induced to erect the pole by the conduct or statements of Ruth or his wife both of whom positively refused to assent to its erection. Nor can the notice given to the company by the letter from Mr. Fluegel of Ruth's intention to apply for a mandatory injunction be held to amount to a proposition to submit a matter of difference between them to judicial determination and await the result. The letter treats the company as a trespasser and contains a positive demand for the removal of the pole. Furthermore Mr. Semmes' letter written six days before the pole was cut down informs the company that his client intended to abandon the equity proceeding and remove the pole unless the company did so at once. Moreover the company after the receipt of Mr. Fluegel's letter instead of waiting to have its rights in the premises determined by the equity proceeding continued its invasion and defiance of Ruth's rights by attaching the transformer and cross-arms to the pole and stringing its wires therefrom. The company can hardly, under such circumstances be heard to insist that he be required to await the result of a long equity suit against a powerful corporation which was in the meantime to be at liberty to aggravate the *status quo* by fresh aggressions. By its answer to the bill for an injunction the company had categorically denied the right of the Ruths to relief and shown no disposition to facilitate the early determination of the issue by means of that suit. Under these circumstances we think that Ruth was entitled to assert his right of abating the nuisance after reasonable notice to the company of his intention, but he thereby lost his right to a further prosecution of the equity suit.

The plaintiff's sixth prayer was based upon the hypothesis.

that permission from the owner of the reversion in fee in the bed of the alley would justify the company in erecting the pole against the prohibition of the owner of the leasehold. That theory is manifestly untenable. The lease was for 99 years renewable forever and the rent reserved by it was redeemable at the pleasure of the lessee. No default under the lease or re-entry by the landlord is alleged or proven in the case. He was not in possession nor entitled to possession of the demised premises and an entry thereon by him would have been a trespass. He could obviously give to a licensee from him no other or greater right to enter than he himself had.

We find no error in the rulings of the learned Judge below and we will affirm the judgment appealed from.

*Judgment affirmed with costs.*