## WILLIAM H. POPE

*vs.*

## EUGENE B. CLARK ET ALS.

*Sewerage systems: not nuisances per se. Injunctions: rules governing—; not for mere relief of mind. Roads: dedication and acceptance.*

A Court will not grant an injunction merely for the relief of the plaintiff's mind, however genuine his apprehension may be. p. 11

A sewerage system is not to be regarded as *per se* a nuisance; and on an application to enjoin the construction of a sewerage system, the Court will presume, until the contrary is made to appear, that those constructing it and having it in charge will keep it in a sanitary condition, as well for their own protection as for the protection of their neighbors. p. 11

In order to justify an injunction to restrain an existing or threatened nuisance to a dwelling house, the injury must be shown to be of such a character as to diminish materially the value of the property as a dwelling, and seriously to interfere with the ordinary comfort and enjoyment of the same. p. 10

The granting of such an injunction involves the exercise of a most delicate power, and the Court is always reluctant to act, except in cases where the right is clear and unquestionable and the facts show an urgent necessity. p. 10

In a bill for an injunction to restrain the construction of a sewerage system, allegations that the petitioner deemed the sys-

tem unsanitary because of the "network of pipes with joints every two feet in ground from which the wells were supplied with water, and because he feared the sewers would become unsanitary for want of suffiicent supply of water to properly flush the same, etc.," are insufficient.                                p. 11

The general rule is that an injunction will only be granted to restrain an actually existing nuisance; but where it can be plainly seen that acts, when completed, will certainly constitute or result in a genuine nuisance, or where a party threatens, or begins to do, or insists upon his right to do, certain things or acts, the Court may interfere, though no nuisance may have been actually committed, if the circumstances of the case enable the Court to form an opinion as to the legality of the acts complained of or of the irreparable injury which will ensue.     p. 10

Before a road becomes a public road, that the County Commissioners are obliged to maintain, there must not only be a dedication, or right acquired by prescription, but there must be an acceptance by the public authorities.   .                          p. 9

*Decided December 2nd, 1913.*

Appeal from the Circuit Court for Montgomery County. In Equity (PETER, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Wm. H. Pope* (with whom was *Bowie F. Waters* on the brief), for the appellant.

*W. Outerbridge Spates* and *J. Roger Spates,* for the appellee.

BURKE, J., delivered the opinion of the Court.

This is the appeal of the plaintiff from an order of the Circuit Court for Montgomery County, sustaining the demurrer of the defendants filed in the bill of complaint and dismissing the bill with costs to the defendants. The object of the bill was to obtain an injunction to restrain the defendants from using the sewers which they had laid under Percy and Douglas streets in the subdivision of Otterbourne, a village in Montgomery County, and requiring them to remove and fill up certain manholes opening in the said sewers.

The Act of 1894, Chapter 622, added certain new sections to Article 16 of the Code of Public Local Laws of Montgomery County. The two sections of that act which concern the question involved in this appeal are sections 60A- and 60F. Section 60A provides that, "Wherever the owner or owners of lands, in Montgomery County, shall subdivide their lands for town or villa sites, streets, lanes or alleys, or for any other purpose, and shall desire, for purposes of description and identification a plat of said subdivision to be recorded among the land records of said county, and whenever any street, avenue, public road, lane or alley shall be acquired by condemnation or otherwise, by the County Commissioners of said county, or by any other person or persons or body corporate, of which a plat is now required by the laws of this State to be recorded, the Clerk of the Circuit Court for Montgomery County is hereby directed to receive and record the same, as hereinafter directed; but said clerk shall not receive for record, nor allow to be recorded in his office, any such plat, until the requirements of the succeeding section of this Act shall have been complied with."

The owners of a tract of land of about fourteen and one-half acres located in Montgomery County subdivided the tract for the purpose of town or villa sites. The tract is now known as the subdivision of Otterbourne. A plat thereof complying with and made in pursuance of the Act of Assembly above mentioned was recorded among the Land Records of Montgomery County. From east to west the subdivision is about

1,000 feet wide, and from north to south approximately 620 feet in length. There were four streets, each 60 feet wide, shown upon the recorded plat. Two of these streets—Douglas and Percy—run east and west, and two—Melrose and Dalkeith—run north and south. A copy of the plat is here inserted:

Before the lots in the subdivision were offered for sale Percy, Douglas and Melrose streets were leveled and graded, and sidewalks were laid on each of the four streets along which shade trees were planted, which have grown to large proportions. These road improvements were made at the joint expense of the founders of the subdivision, and the streets and sidewalks have been maintained in fair condition until the work of constructing certain sewers complained of in this suit.

Section 60F of the act provides: "When said plats are so recorded, those portions of said land designated on said plats as streets, roads, avenues, lanes, alleys and public parks or squares, shall be and the same are hereby declared to be forever dedicated to public use, and shall not thereafter, on any

pretext whatsoever, be altered or taken for private use; provided, however, that nothing herein contained shall affect the rights of any person or persons owning or claiming any interest in said land derived by, from or under any persons other than the maker of such plat, or by, from or under such maker prior to such subdivision, etc." The entire tract now comprising the subdivision of Otterbourne, was acquired in 1894 by the defendants, E. B. Clarke and R. I. Geare, in conjunction with the husbands, now deceased, of the defendants Louise H. Earle and Lillie M. Ellis; but the title to the land was taken in the name of John Franklin Ellis. He executed the plat referred to, and caused it to be recorded with the consent of the other owners, and it was the intention of all the owners that the plat and recording thereof should operate as a dedication of the streets of the subdivision to public use, and for the common and equal benefit and use of all lot holders, present and prospective.

The land was divided into 69 building lots,—20 in block 1; 16 in block 2; 17 in block 3, and 16 in block 4. All the lots faced north and south, their frontage being either on Percy or Douglas street. The lots are mainly of a width of 50 feet, and of the depth of 125 feet. There are now ten dwellings in the subdivision, and as shown by the plat, egress and ingress to and from the property is over Douglas and Percy streets to the Brookville road on the west. After the plat had been recorded, the lots were partitioned among the owners and the deeds from Ellis to his co-owners conveyed the lots by lot and block number, subject to certain covenants and restrictions, running with the land and binding on each lot owner, prohibiting the erection of any building costing less than two thousand dollars and permitting buildings to be occupied only for residental purposes. The covenant or restriction with which we are concerned in this case, in each deed in the subdivision, is as follows:

"No privy shall be constructed on the premises unless the same shall be provided with a brick vault thoroughly lined with cement, or a water-tight wooden box

provided with metal pails, and that no cesspool shall
be sunk or constructed on the premises unless the same
shall be built of brick or stone laid in cement, and thor-
oughly lined and entirely covered with the same, and
kept in repair so that it shall be at all times water-
tight, and kept from overflowing or leakage, subject at
all times to the inspection and approval of the owners
of property in said subdivision of Otterbourne."

The founders of the subdivision made no provision for a
sewer system, or a public water supply, and it is alleged in
the bill that the sanitary provisions above quoted were de-
signed and intended to safeguard the purity of the ground
water to be collected for household use in any well which a
lot owner constructed on his premises. In March, 1902, the
plaintiff purchased, and is now the owner of two lots in the
subdivision upon which he has erected valuable improve-
ments. One lot has a frontage of 101 feet on Percy street,
and the other 90 feet on Douglas street, and each lot also
binds on Dalkeith street. The defendants are the owners of
all the other lots and improvements in the subdivision.

The owners of all the other lots desired to establish a sewer
system in the subdivision. The plaintiff refused to co-operate
with them in that enterprise, and objected to its construction.
They, however, entered into an arrangement with the Chevy
Chase Land Company whereby it constructed through the
center of Melrose street and through the center of lots to the
north and south of that street a large trunk sewer, laid at a
considerable depth below the surface for the purpose of carry-
ing through Otterbourne the sewage of a subdivision lying to
the south thereof, and under an arrangement made with that
company they obtained the privilege of connecting lateral
or branch sewers laid on Percy and Douglas streets with the
trunk sewer in the bed of Melrose street. Defendants had
completed the work of laying the lateral or branch sewers in
Percy and Douglas streets before the institution of this suit,
and were then engaged in making house connections. These
sewers were not laid on the half of said streets upon which

the lots of the plaintiff directly abutted, and none of the
sewers are laid within the lines of his deeds. It is alleged
that the plaintiff refused to "co-operate or consent to the
carrying out of said sewerage scheme, because he deemed
it unsanitary to put a net work of sewer pipes with joints
every two feet in the ground from which the wells were sup-
plied with water, because he feared the sewers would become
unsanitary for want of a sufficient supply of water to properly
flush the same, and because he was unwilling to become a
partner in the construction and operation of sewers by volun-
tary associations irresponsibly controlled."

The bill further alleged that "the defendants, as authority
for the acts done and threatened to be done by them, as here-
tofore averred claim and contend that by virtue of the respec-
tive conveyances to them of the lots owned by them respec-
tively by lot and block number, they are the legal owners in
fee to the center of the abutting streets, subject only to the
public easement of passage, and have lawful right to take
into their possession and control the streets and sidewalks of
the subdivision, and to excavate therein at pleasure for the
purpose of laying sewers or making house connections with
the same or for the purpose of repairs either to the street
mains or house connections or for any other purpose which
may be deemed beneficial to the combination."

It is further alleged "that the acts and doings herein com-
plained of, constitute in practical effect a monopolization by
the defendants of the streets and sidewalks of the subdivision
of Otterbourne for sewer and other purposes of a general
nature, and such acts and doings, and the claims made in con-
nection therewith, as heretofore averred, constitute a cloud
upon the title of the plaintiff to the right of beneficial use
and enjoyment of the streets and sidewalks of the subdivision,
common with all other lot owners, and the right to have such
sidewalks and streets continue in a sanitary condition and in
a normal state of repair and not rendered dangerous to travel
upon, and materially depreciates the value of the real prop-
erty in the subdivision owned by the plaintiff, and if the

claims of the defendants are not held invalid will render the property of the plaintiff unsalable, since opportunity will not exist to obtain a suitable sewer or other privilege of a general nature, while if the sewers in question are by the public deemed to be unsanitary, their presence in the subdivision will materially depreciate the value of the plaintiff's aforesaid property."

After setting out the facts we have recited and charging that the acts and purposes of the defendants with respect to the construction of the sewer system constitute an unreasonable and unlawful user of whatever rights in the streets of Otterbourne the defendants may have, highly prejudicial to the plaintiff, it is alleged as follows: "Aside from the character, as to whether sanitary or unsanitary, of the disposal plant with which the branch sewers in question are connected, there is imminent danger that the construction of said branch sewers may introduce a nuisance into the streets of the subdivision, which may arise either from the use of unsuitable or defective pipes, the manner in which the pipes have been laid, or the mode in which they are maintained, or from all of said causes combined. Such nuisance is especially likely to arise from the sewers as constructed, since the pipes are loosely telescoped, and a joint must be broken out whenever a house connection is made, no control is exercised over the making of such connections, and there is not an adequate supply of water under sufficient pressure for the proper flushing of the pipes. So, also, the streets and sidewalks are liable to be excavated and torn up 60 or more times at the pleasure of the individual lot owners, before all lots are connected with the sewers, and the cleansing and repair of the sewers may also necessitate frequent excavations of the streets, all conducing to the streets being in a constant state of disrepair as well as unsanitary, and operating to depreciate the value of the property of the plaintiff."

By virtue of the Act of 1894, Chapter 622, the legal effect of recording the plat referred to was to dedicate the streets shown on the plat to public use, and that use could not there-

fore be altered or changed except under proceedings provided by section 60F of the Act. But the mere recording of the plat did not make the streets public highways, or, public roads. "There must be not only a dedication, or a right acquired by prescription, but there must be also an acceptance before the road becomes a public road that the County Commissioners are obliged to maintain. * * * Not only is such an acceptance necessary, but it must be proved by the party who asserts the way to be a public way; and it may be proved, when express, by the records, or it may be implied from repairs made and ordered or knowingly paid for by the authority which has the legal power to adopt the street or highway, or from long user by the public." *State, use of James,* v. *Kent County,* 83 Md. 377. It is said in *Kennedy* v. *Cumberland,* 65 Md. 514, that "Any individual may lay out a thoroughfare through his land, but such dedication does not impose upon the county or the municipality the duty of improving or keeping it in repair. There must be an acceptance of the dedication before this duty can arise."

The record is utterly devoid of evidence to show any acceptance by the county of the streets, and there has been no such user of them by the public for the length of time as would constitute them public highways by prescription. We, therefore, can not assent to the proposition contended for by the appellant that the streets are public highways.

The terms of the plaintiff's deed, by virtue of section 96, Article 21 of the Code, passed title to his two lots to the center of the streets upon which they bounded. But the sewers of which he complains are not laid upon his property or within the lines of his deeds. Nor does the bill allege that his right of ingress and egress to and from his lots, or his travel over the streets, has been interferred with, or obstructed by the laying of the sewers. For ought that appears from the bill the streets may be in as good condition as they were before the sewers were constructed. There is no existing nuisance which would justify the granting of an injunction,

and the application, as disclosed by paragraph 9A, is for an injunction to restrain a threatened nuisance.

It was said by this Court in the leading case of *Adams* v. *Michael,* 38 Md. 123, that "to justify an injunction to restrain an existing or threatened nuisance to a dwelling house, the injury must be shown to be of such a character as to diminish materially the value of the property as a dwelling, and seriously interfere with the ordinary comfort and enjoyment of it. Unless such a case is presented a Court of chancery will not interfere. It must appear to be a case of real injury, and where a Court of law would award substantial damages. *Walter* v. *Selfe,* 4 D. G. and S. M. 323; *Jackson* v. *New Castle,* 33 L. J., Ch. 698; *Soltau* v. *De Held,* 2 Sims. (N. S.), 159; *Kerr on Inj.* 350. Where, however, such is shown to be the case, the power of the Court is clear and it will interpose by injunction. * * * The granting of an injunction on an application of this character involves the exercise of a most delicate power, and the Court is always reluctant to act except in cases where the right is clear and unquestionable, and the facts show an urgent necessity. The general rule is, that an injunction will only be granted to restrain an actually existing nuisance, but where it can be plainly seen that acts, when completed, will certainly constitute or result in a grievous nuisance, or where a part threatens or begins to do, or insists upon his right to do, certain things or acts, the Court will interfere though no nuisance may have been actually committed, if the circumstances of the case enable the Court to form an opinion as to the legality of the acts complained of or the irreparable injury which will ensue."

The whole case of the plaintiff rests upon the allegations of the 9th paragraph of the bill which we have quoted, and in disposing of those allegations we adopt the views expressed by JUDGE PETER in the Court below:

"The gravamen of the plaintiff's complaint is to be found in his apprehension that the use of the sewers by the defendants may create a nuisance which will affect the enjoyment

and depreciate the value of his property. He alleges the pipes as laid are likely to leak and that connections with them may be so unskillfully made as to cause them to leak, and in the event they do leak the sewage escaping therefrom may find its way into and contaminate the water in his well. He further alleges that there is no adequate supply of water under sufficient pressure for the proper flushing of the pipes; that the streets and sidewalks are liable to be torn up 60 or more times before all lots are connected with the sewers; and that the cleansing and repair of the sewers may also necessitate frequent excavations of the streets. * * * The Court does not sit in a case like this for the relief of the plaintiff's mind, however genuine his apprehension may be, but for the protection of his property rights from an impending danger. Accepting the allegations of facts contained in the plaintiff's bill to be true, as they must be for the purposes of the issue being tried, the Court finds that there is not such impending danger to the property rights of the plaintiff as will authorize the Court to grant the relief he asks and by so doing deprive the defendants of the enjoyment of the utility which they have installed at great expense. In thickly populated communities a sewer system is all but a necessity. In a village like Otterbourne it is a luxury. But whether it be a necessity or a luxury, it is certainly not to be regarded as *per se* a nuisance. Not being in itself a nuisance the Court will presume, until the contrary is made to appear, that those who use it will take care that it is kept in sanitary condition as well for their own protection as for the protection of their neighbor."

Inasmuch as the bill of complaint does not state facts sufficient under the rules which authorize the Court to grant an injunction to restrain an apprehended or threatened nuisance, the order appealed from will be affirmed.

*Order affirmed, with costs.*