FRANK CAMPEGGI ᴇᴛ ᴀʟ. *v.* CAROLINE L. WAKEFIELD.

[No. 52, January Term, 1929.]

*Decided April 3rd, 1929.*

The cause was argued before BOND, C. J., URNER, ADKINS,. OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Edward H. Burke,* with whom were *C. Walter Cole* and. *Bowie & Burke* on the brief, for the appellants.

*Karl F. Steinmann,* with whom were *Louis J. Jira* and *Arthur G. Logan* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court of Baltimore City, passed on the 19th day of December, 1928, restraining the appellants from cutting, destroying or removing any "trees, hedge, shrubbery or curb" from a twenty-five foot strip of land, running along the northern boundary of their property, which they claim as a way appurtenant thereto, and it involves the following facts:

On August 31st, 1903, Julius Requard and wife conveyed to Martha E. Brown and husband a lot of ground fronting on the Old Harford Road, and binding on a 25-foot avenue running westerly from its intersection with that road, with the right to use that avenue, as a way in common with the grantors, for ingress and egress to and from the lots adjoining and to the rear thereof. On October 18th, 1906, Martha E. Brown and her husband conveyed the same land to Frank Campeggi and his wife, and that deed called for the same avenue, and also stated that it was to be used in common by the Requards, the Browns, and their heirs and assigns for ingress and egress to and from the lots adjoining and to the rear thereof.

The land thus conveyed by Requard to Brown in 1903 was part of a larger tract, over part of which the avenue in question ran, and on June 29th, 1905, Requard granted to William McAllister et al., out of the remainder of the tract, a lot binding on the northern boundary of the 25-foot avenue. The title to that lot and such rights as the Requards had in the avenue eventually became vested in the Hamilton Park Company, which on April 30th, 1919, conveyed the same to Julius Poehlman and his wife, by a deed which contained this clause: "Subject to the right of way heretofore granted by Julius Requard and wife to Martha E. Brown by deed dated August 31, 1903 and recorded among the Land Records of Baltimore County in Liber N. B. M. No. 269, folio 496." Poehlman and his wife conveyed the same lot on April 4th, 1923, to Caroline L. Wakefield, the appellee, and in the same deed they attempted to convey to her the bed of the 25-foot avenue which separated that lot from the lot now occupied by

232

the appellants, and which they referred to as "the same lot of ground described in a deed from The Hamilton Park Company to said grantors, dated April 30th, 1919, and recorded among the Land Records of Baltimore City in Liber S. C. L. No. 3354, folio 255, etc." That reference, while literally true as a description, as a title reference was misleading, because while the land was in fact described in the deed from the Hamilton Park Company, it was described in connection with its use as a right of way, and not as unfettered fee simple property.

As a result of these conveyances the appellants own a lot binding on the south side of a 25-foot avenue running westerly from the Old Harford Road, now called Glenmore Avenue, and described in the Brown deed of 1903 as "an avenue twenty-five feet wide now for the first time laid out on the land of the grantors of this deed and intended to be used in common by the grantors and grantees hereunder, their heirs or assigns and particularly as a means of ingress and egress to and from the lots adjoining and to the rear hereof." The appellee owns a lot binding on the north side of the same avenue, described in 1919, in the deed to Poehlman, from whom she took title, as the "right of way heretofore granted by Julius Requard and wife to Martha E. Brown by deed dated August 31st, 1903."

And the appellee also claims under her deed from Poehlman the fee simple title to the 25-foot avenue.

Whilst the titles of the respective parties were in that state, on October 19th, 1928, Mrs. Wakefield filed her bill of complaint against Mr. and Mrs. Campeggi, in which she alleged that she was the owner of "certain property at the corner formed by the intersection of the Harford Road and Rosedale Avenue," an avenue on the north side of Mrs. Wakefield's lot, and that the defendants had threatened to and actually were destroying shrubbery, hedges and trees thereon. Upon those scant allegations she asked that the defendant be enjoined from "cutting and destroying the aforesaid trees, hedges and shrubbery," that they be required to "account" to her for their acts, and that they be required

to "re-establish the shrubbery cut down." Although no exhibit of any kind was filed with the bill, the court on the same day issued this peremptory order: "That the defendants in the above entitled case, their agents, servants and employees are hereby restrained and enjoined from trespassing upon the property of the complainant and from destroying, cutting or injuring the shrubbery in any manner whatsoever, and that the defendants be required to re-establish the shrubbery cut down, with leave to rescind this order on five days' notice to other side."

The defendants filed a combined answer and demurrer to the bill. In their answer, in addition to the facts to which we have referred, they alleged that the complainant had for years "endeavored to take away from" them their title to and right to use in common the 25-foot avenue, that she had obstructed it by planting hedges therein, and that the acts of which she complained had been done in removing those obstructions from that avenue, and denied that they had in any way encroached upon any other land, and they asserted a title in fee to the southern half of the avenue. In their demurrer they relied upon a general want of equity in the bill, upon the failure of the complainants to file essential exhibits, and upon the absence of any allegation of irreparable injury.

The record does not show that the demurrer was ever considered, but, on October 30th, 1928, the defendants moved to strike out the restraining order, and that motion was heard on the bill, answer and testimony. There was no substantial conflict in the testimony and, without referring to it in detail, it is sufficient to say that it indicated that nothing had been done which affected the use of the 25-foot strip as an avenue or way until about twelve years before this suit, when a certain Lohmuller, who appears to have had some interest in the land now owned by the appellee, built a curb across it at the front and rear. After that Poehlman graded and seeded it, and planted in it several "umbrella" trees, and later Mrs. Wakefield planted a hedge along the southern line of the strip and across that part of it which

intersects Glenmore Avenue. All of these alleged encroachments were made over the unavailing protests of the appellants, who finally, acting under the advice of counsel, removed a part of the "curb," and also so much of the hedge as was on the line between this land and the 25-foot strip, and a part of that which was planted across that part of the strip which intersects Glenmore Avenue. It also appears that certain buildings on the appellee's land encroach from one foot five inches to six and one-half inches, but no complaint is made of that encroachment and it is not involved in this proceeding.

Upon that testimony, after a hearing, "it appearing to the court" that the title to land was involved, on November 30th, 1928, it dismissed the bill, without prejudice to the right of the complainant to institute an action at law for redress for any wrongs she may have suffered at the hands of the defendants.

Upon the 19th of December, 1928, appellee filed in the same court a petition in which, after referring to the history of the original suit, she charged: "That the matter came on for a hearing upon defendant's motion to dissolve the restraining order and it appearing to the court that a question of title to real property was involved, the court dissolved the restraining order, and suggested that an agreement be entered into by the parties whereby no further acts of trespass or of destruction would be committed by the defendants, until an action at law in trespass *quare clausum fregit,* which plaintiff had filed against the defendants in the Superior Court of Baltimore City, should have been tried, so as to decide the question of title to the property." She also alleged that she had been notified by the defendants to remove all trees and shrubbery from the 25-foot strip, and informed that if she did not comply with the request they would be removed by the defendants, and that "the said twenty-five (25) foot strip of property upon which the said trees, shrubbery, hedge and curb are located, has been enjoyed by your petitioner and used by her as part and parcel of her private residence located thereon for many years,

and the trees are ornamental, shade and fruit trees, and the hedge and curb form part of the boundary line of your petitioner's property," and she prayed that "the defendants, their agents and servants, be enjoined and restrained from entering on the twenty-five (25) foot strip of land in dispute, from cutting and/or destroying and/or removing any trees, shrubbery, hedge or curb on the twenty-five (25) foot strip of land and/or any other property of the plaintiff, until the termination of the action in trespass *quare clausum fregit* now pending in the Superior Court of Baltimore City between the parties to this suit," and she also asked that the case be re-opened. Upon that petition the court, without any notice to the defendants, on the same day passed an order restraining and enjoining them "from cutting, destroying or removing any trees, hedge, shrubbery or curb from the said property, or any property of plaintiff's; and that this restraint shall continue until title to the said twenty-five (25) foot strip of land shall have been decided in the action of trespass *quare clausum fregit* now pending between the parties hereto in the Superior Court of Baltimore City, provided a copy of this order be served upon the defendants or their solicitor, Edward H. Burke, Esquire, and that said suit be duly prosecuted to trial without any unreasonable delay on behalf of plaintiff." From that order, after answering the petition, the defendants on January 7th, 1929, took this appeal.

The procedure resulting in the passage of the order from which the appeal was taken was unusual. On November 30th, 1928, after testimony had been taken and the cause heard, the bill was finally dismissed with costs to the defendants. On December 19th, 1928, upon the allegations of the petition of December 19th, without reopening the case or affording the defendants any opportunity to answer or defend, the court in effect restrained them from exercising any beneficial use of the strip until the title to it should have been decided in an action of trespass *quare clausum fregit* instituted by the appellee, then pending in a court of law. Technically, since the decree finally dismissing the original

bill had not been stricken out, in passing upon the prayer of the petition of December 19th, 1928, the court had nothing before it other than the petition itself, and a copy of a letter from defendants' counsel to counsel for the appellee, notifying him of their intention of removing obstructions from the strip unless defendant did so. But as counsel for appellee in their brief have treated the proceedings in the original case as a part of the proceedings leading to the passage of the order appealed from, we will assume that they are intended to be taken and considered as a part of this proceeding, and that the learned chancellor, in passing that order, in effect vacated the decree dismissing the original bill. The final and decisive question submitted by the appeal therefore is, whether upon the whole case the order of December 19th was properly passed.

There is no doubt that, where there is a real dispute as to the title to real property, based upon substantial grounds, that a court of equity will restrain any acts or conduct which may damage or waste the property until that dispute can be adjudicated, *Lewis & Spelling on Injunctions,* sec. 61; *Pomeroy's Equity Jur.* (2nd Ed.) 6; *Mullikin v. Hughlett,* 142 Md. 542; *Clayton v. Shoemaker,* 67 Md. 216. But the dispute must be something more than a mere unsupported claim. *Greenbaum v. Harrison,* 132 Md. 38. And in a case of this character, as in any other case, the complainant assumes the burden, common to every one who seeks relief by injunction in a court of equity, of producing at least *prima facie* evidence sufficient to satisfy a sound judicial discretion that there is a substantial basis for the relief sought, and a reasonable probability of ultimate success. 32 *C. J.* 126, n 99; *Mitchell v. Colorado Fuel & Iron Co.,* 117 Fed. 723; *Baker v. McKinney,* 54 Fla. 495; *Amos v. Norcross,* 58 N. J. *Eq.* 256. In this case the whole basis of the complainant's right to the relief prayed either in the original bill or the petition is summed up in the naked allegation that she "is the owner" of the land in dispute. But to entitle her to so summary and severe a remedy as an injunction, she was required to do more than that; she should at least have sub-

mitted to the chancellor *prima facie* evidence indicating the source of her title, or the character of her possession, if she was in possession of the property. But, so far from doing that in her original bill, she concealed from the court facts which constituted an absolute bar to the relief sought, and, although the fact that she had no title superior to that of the appellants had been demonstrated by the evidence taken in the original case, in the petition filed subsequent to the dismissal of her bill she alleged that the ornamental shade, fruit trees and curb located on the 25-foot strip were a part of the boundary line of her property. Her failure to fully and frankly inform the court of the *res gestae* was in itself a sufficient reason for dismissing her bill. *Tifel v. Jenkins,* 95 Md. 667. But the evidence in the case furnishes an even stronger reason, for it conclusively shows that the appellants have a perfect record title to the free and unobstructed use of the entire strip of ground as a way in common for ingress and egress to and from their lot, and that that title was recognized in the deed under which appellee's grantor took title to the property in 1919. *Knotts v. Summit Park Co.,* 146 Md. 240; *Adams v. Peninsula Produce Exchange,* 138 Md. 660; *Bump v. Sanner,* 37 Md. 621.

Moreover, under the deeds from the Requards to the Browns and from the Browns to appellants, under Code, art. 21, sec. 98, as construed in *Maryland Telephone Co. v. Ruth,* 106 Md. 644, and *Pope v. Clark,* 122 Md. 9, they hold the fee in that part of the avenue which lies between the center line thereof and their property. The description of the land conveyed by those deeds calls for the avenue as one of the boundaries thereof, and in such case the statute provides that they shall be construed to pass to the grantee all the right, title, and interest of the grantors in the land to the center of the street on which it binds. And that language was held in the cases last cited to apply to private as well as public streets. There is not the slightest evidence to be found in the record which tends to show that the appellants have ever divested themselves of that title, that they ever abandoned their right to use the way to its full extent, that the appellee had or even

asserted any claim to it based upon adverse user, or that the appellants were in any way estopped from exercising their right to its free and unobstructed use. Under such circumstances the appellants themselves, so long as such abatement did not involve a breach of the peace, had the right to remove any obstructions on the avenue which interfered with their reasonable use thereof (19 *C. J.* 988), or they could have maintained an action for the invasion of their legal rights, occasioned by planting the hedge on that part of the avenue which they owned in fee. *Bump v. Sanner,* 37 Md. 621.

Under such circumstances, appellee was neither entitled to a permanent determinative injunction as prayed in her original bill, nor to a preliminary ancillary injunction as prayed in her petition. For, so far as the record discloses, there was no possible reason for a court of equity to interfere with the appellants' right to the use of the way pending the trial of the action of trespass *quare clausum fregit* instituted by the appellee to establish her title, because upon the record before us it conclusively appeared that she had no title which could enable her to deny to the appellants the free and unobstructed use of the strip of land as a way of ingress and egress to and from their property. *Oberheim v. Reeside,* 116 Md. 265; *Greenbaum v. Harrison,* 132 Md. 38. For those reasons the original bill as well as the petition should have been dismissed, and that result will follow from the reversal of the order appealed from and the dismissal of the petition, which will accordingly be done.

*Order reversed and petition dismissed, with costs to the appellants.*