GRUNWELL ET UX. v. HENDERSON ET UX.

[No. 281, September Term, 1958.]

*Decided June 9, 1959.*

*Motion for rehearing filed July 8, 1959, denied July 14, 1959.*

The cause was argued before Brune, C. J., and Henderson, Hammond, Prescott and Horney, JJ.

*John F. Heath* for the appellants.

*Paul J. Bailey* for the appellees.

Horney, J., delivered the opinion of the Court.

This is an appeal from a judgment for costs entered by the Circuit Court for St. Mary's County against John R. Grunwell and wife (the Grunwells), who had sued Joseph L. Henderson and wife (the Hendersons) in an action in trespass *quare clausum fregit,* to recover damages alleged to have resulted when the Hendersons broke a close claimed by the Grunwells.

The parties own adjoining properties on St. George Island. The Henderson property, in two parcels, is located on the northwesterly and southeasterly sides of a private roadway leading from the public road and running in a southwesterly direction toward the Potomac River. The Grunwell property, also in two parcels separated by the Henderson property, is located on the northeasterly and southwesterly sides of the Henderson property. The northeasterly parcel (after excluding the lot of Joseph A. Henderson hereinafter mentioned) also lies on both sides of the roadway leading from the public road, which ends at or near the dwelling on the southwesterly parcel.

Potomac River

S 24¾° E 405'

Charles T Fadd's - Land

S 68½° W 487'

Jos L Henderson

N 46° W 188'

S 46° W 188'

S 40° W 185'

JOHN R - GRUNWELL

HOUSE

N 53° E 752¾'

Joseph Robrecht's - Land

S 40° W ROAD 185'

J. L. HENDERSON 7 Acres

John McBeth

N 33° W 155'

S 33° 57' W 162'

S 33° 57' W 162'

Jos A. Henderson

N 53° E 780'

S 40° W 185'

S 48° 25'

S 55° W 155'

JOHN R. GRUNWELL

S 33° E 255 4/10'

N 53° E 155'

PUBLIC ROAD

Scale: 1" = 100' - 00"

JOHN R GRUNWELL PURCHASED FROM VIOLET E. NORRIS

Violet E. Norris purchased from Benj H. Crouchan 5 7/100 Acres

Situate in 9th Election District - St. Mary's County Maryland

Part of St. George Island

Magnetic Meridian July 31, 1946

N

Geo. W. Fry, Surveyor for St. Mary's County Maryland, Leonardtown, Maryland, July 31, 1946

PLAINTIFFS' EXH. NO. 2

Several years before suit was filed the Hendersons had installed a sewage pipe line from a septic tank on the trapeziform northwesterly parcel (usually hereinafter referred to as the "northwest" lot) under the roadway to a tile field and dry well on the squarish southeasterly parcel (usually hereinafter referred to as the "southeast" lot). The close which it is claimed was broken consists of the land in the bed of the roadway between the northwest and southeast lots of the Hendersons.

When the suit was filed the Hendersons pleaded "not guilty" and asserted in special pleas that they had trespassed with permission and that the common roadway, as a site for the pipe line, was an "implied" way of necessity. They did not then or at the trial claim ownership of the bed of the roadway or any part thereof. On the other hand, the Grunwells contend that the installation of the pipe line constituted a compensable trespass on land owned only by them. Although they denied a permissive use and a way of necessity, they concede that the pipe line has neither interfered with their use of the roadway nor caused them any substantial damage.

The trial court found that the northwest lot "did in fact bind on the roadway," and that the roadway was one of the lines of the southeast lot. Relying on those cases which have held that Code (1957), Art. 21, § 107, is as applicable to a private way as a public way, the court concluded that the Hendersons owned the entire bed of the roadway and entered a judgment *nisi* for costs in their favor. Although the transcript does not show it, we were assured by counsel that a final judgment was entered as of course by the clerk in pursuance of Rule 567 e. We shall assume, therefore, that the clerk performed this ministerial duty.

On this appeal, although each party concedes that the other had a right to use the roadway for egress to and regress from the public road, both claim ownership in fee of the bed of the roadway. Alternatively, the Hendersons also claim they are entitled to a way of necessity for the pipe line by implication. However, since it does not plainly appear by the record that either of the questions concerning the grant of a permissive use or the existence of an implied way of necessity, although

presented below, was decided by the lower court, we shall confine our decision in this case to the question of the ownership of the bed of the roadway. See Rule 885. The issue—whether or not the Hendersons trespassed upon the land of the Grunwells without lawful authority—necessarily depends on who is the owner of the bed of the roadway in which the pipe line was installed.

There was uncontradicted oral testimony to the effect—indeed it was conceded by the Grunwells—that the roadway had been used in its present location for more than forty years. In fact Joseph L. Henderson testified that the "road had been there" on what was then his grandfather's property ever since the witness—who was fifty-two years of age—could remember. The witness also testified that his father had used the road since 1875; that the road was there and in use when Robert J. Henderson built his house on the northwest lot in 1909; and that he [Joseph L. Henderson] has continued to use the same road ever since he purchased the northwest lot in 1937. It appears that the roadway began—as roads in the country often do—as "a big path" and was gradually developed into the 16.5-foot oyster shell and dirt road now in use. The record does not show when use of the road for vehicular traffic began, but it was doubtless so used before it was first improved by the application of oyster shells and dirt in 1936 so that it could be more conveniently used for motor vehicle traffic. There was no evidence that the road had ever been located in a place other than where it is shown to be on the plat.

The properties of the Grunwells as well as those of the Hendersons were formerly parts of a tract of land containing 7.35 acres of land, which was acquired by Charles E. Henderson and John W. Henderson on August 14, 1886, and which was held by them as tenants in common until May 28, 1897, when Charles conveyed his one-half interest in the tract to John.

On April 1, 1916, John W. Henderson conveyed to Robert J. Henderson the northwest lot—having (1) a northwesterly boundary line of "about" 175 feet in length, (2) a northeasterly boundary line of "about" 30 feet in length, (3) a southeasterly boundary line of "about" 160 feet in length and (4) a southwesterly boundary line of "about" 100 feet in length—contain-

ing "one quarter [.25] of an acre of land, more or less." But the lot was not described as binding on the roadway nor was the roadway described as one of the lines of the lot. Moreover, other than the usual appurtenance clause, containing the words "alleys, ways," among other words not pertinent here, there was no reference to a right of way from the lot to the public road. It is conceded that the northwest lot is now owned by the Joseph L. Hendersons.

Sometime between May 28, 1897, and August 9, 1946, John W. Henderson, or his successors in title to the remainder of the original 7.35-acre tract, also conveyed to Joseph *A.* Henderson—not to be confused with Joseph *L.* Henderson—a lot containing 1.58 acres, leaving 5.52 acres, the title to which by mesne conveyances, was ultimately acquired by Violet E. Norris.

On August 9, 1946, Violet E. Norris *et vir* conveyed the remainder of the original tract (containing 5.52 acres) to John R. Grunwell,[1] by metes and bounds, courses and distances. The 8th line as well as the 9th, 10th and 11th lines thereof, which excluded the northwest lot of the Hendersons, were described as follows, according to the deed and plat [2] filed therewith:

"[T]hence [8] S. 69 deg. 30 min. W. 173 feet to a stake in a corner of a fence a boundary of Joseph L. Henderson's [northwest] lot; thence [9] with * * * Henderson's lot S. 43 deg. E. 25 feet [to the roadway] ; [10] [with the roadway] S. 44 deg. 30 min.

---

1. By straw deeds dated March 13, 1955, the 5.52-acre tract of John R. Grunwell was conveyed to Charlotte L. Grunwell and John R. Grunwell "as joint tenants with right of survivorship."

2. This plat [Exhibit B], which was recorded with the deed dated August 9, 1946, and the plat hereinbefore reproduced [Exhibit No. 2] as well as the deed for the southeast lot [hereinafter referred to—from the Grunwells to the Hendersons—dated July 23, 1951] were received in evidence without proof by stipulation. Exhibit B and Exhibit No. 2 are identical except that Exhibit No. 2 also shows the metes and bounds, courses and distances, of the southeast lot. This lot is not shown on Exhibit B.

W. 188 feet; [11] N. 44 deg. 30 min. W. 108 feet to
a stake set at the northwest boundary of * * * Joseph
L. Henderson's lot * * *."

Here, too, the excluded northwest lot was not described as bind-
ing on the roadway nor was the roadway described as one of
the lines of the excluded lot. But, when the lines of the ex-
cluded lot are compared with the plat, it appears that the 9th
line of the Grunwell property is the same as the *second* line
of the Hendersons' northwest lot; that the Grunwell 10th line
is the same as the Henderson *third* line; and that the Grunwell
11th line is the same as the Henderson *fourth* line. It also
appears that the Henderson *third* line, shown as a solid line
on the plat, does bind on the northwesterly side of the road-
way.

On July 23, 1951, the Grunwells conveyed the southeast lot
to the Hendersons. In the conveyance of this lot, containing
.62 of an acre, the roadway is described as the first line, thus:

"Beginning * * * at an iron pipe * * * in the
southeasterly boundary line of John R. Grunwell's
driveway, the * * * pipe being South 44 deg. 30 min.
East 16.15 feet from a white square stone, marking
the southwest corner of the property of J. Lawrence
[Joseph L.] Henderson, thence [1] with the south-
easterly boundary line of Grunwell's driveway North
43 deg. 29 min. East 182.2 feet to a pipe * * *."

It is noteworthy that the beginning of this southeast lot is based
on a call [white square stone] located on the opposite side of
the 16.5-foot roadway at the southwest corner of the north-
west lot.

Chapter 684 of the Acts of 1892, now codified as Art. 21,
§ 107, *supra,* provides that a conveyance of land *binding on a
street or highway,* or when a *street or highway is one of the
lines* of a conveyance, such conveyance shall be construed to
pass the interest of the grantor to the center of the street or
highway, unless title to such street or highway is expressly
reserved.

In *Campeggi v. Wakefield,* 157 Md. 229, 237, 145 A. 546

(1929), it was held that the provisions of § 107, *supra,* applied to a 25-foot private avenue in a city used in common with others as well as to a public avenue. See also *Pope v. Clark,* 122 Md. 1, 9, 89 A. 387 (1913), [dedicated, though unaccepted, street in a subdivision] ; *Maryland Tel. & Tel. Co. v. Ruth,* 106 Md. 644, 651, 68 A. 358 (1907), [private alley in a city]. And see *Callahan v. Clemens,* 184 Md. 520, 41 A. 2d 473 (1945), [statute applicable to property binding on a private alley in a city as well as a public way] ; *State Roads Comm. v. Teets,* 210 Md. 213, 123 A. 2d 309 (1956), [statute applicable to property binding on a 20-foot strip or "roadway" in rear of lots in summer resort intended as car-parking space for owners of lots].

Since this case was tried by the lower court without a jury, we review it on both the law and the evidence, but the judgment should not be set aside on the evidence unless the entry of a judgment was clearly erroneous. Rule 886 a. We find no error. Indeed we think the trial court was justified in finding on the oral and documentary evidence produced that the northwest lot was in fact binding on the *existing* private roadway when it was conveyed to Robert J. Henderson by John W. Henderson on April 1, 1916. There is no doubt that the southeasterly line of the roadway is identical with the first line of the southeast lot which is specifically described as binding on the roadway. Moreover, it appears that neither the grantor of the northwest lot nor the grantor of the southeast lot reserved title to any part of the bed of the roadway. Since both conveyances passed the interest of the respective grantors to the center of the roadway, it is clear that the Hendersons, being the owners of the fee in the bed of the roadway, were not guilty of trespass when they installed the sewage pipe line under the surface thereof. The judgment for costs will therefore be affirmed.

*Judgment affirmed, the appellants*
*to pay the costs.*