THOMAS B. CLARK *vs.* CORNELIUS KELIHER.

A written notice of the landlord to determine the estate of a tenant at will in a dwelling house where he resides with his wife, which is served by leaving it with her there while he is out of the town, is not invalidated by a mistake in his name, if she understands that it is intended for him.

One who has continued to occupy a dwelling-house, with his wife and family and furniture, for five days after his estate as a tenant at will has been determined by notice from the landlord, cannot maintain an action of tort against the landlord for then peaceably enter ing the house at a time when the plaintiff was out of the town and his wife and family were temporarily absent, and setting the furniture out of doors, and preventing them from reëntering the house; although the furniture remained without shelter during the ensuing night, and was rained upon the next day before the plaintiff's wife was able to store it.

One on whose close hens are trespassing has no right to kill them, although, in conse quence of former like trespasses, he has asked their owner to shut them up and threat ened to kill them if he should not do so.

TORT, brought originally before a justice of the peace, who gave judgment for the plaintiff. The defendant appealed to the superior court, where the facts were agreed as follows :

" The defendant, by an oral lease, rented a tenement house and small lot of land on Devens Street in Greenfield to the plaintiff, at the rate of seven dollars per month. The plaintiff began to occupy under his lease May 7, 1870. On the 7th of June the rent was paid. The defendant left the following notice, signed by him, at the house of the plaintiff, with his wife, on the 7th of June, the plaintiff being out of town ; and she then understood that it was intended for her husband and herself: ' To John Clark and wife. I hereby give you notice and require you to quit and deliver up to me, on the 7th day of July next, the possession of the dwelling-house, with the appurtenances thereto, which you now hold under me, situate on Devens Street in Greenfield, and next west of my own house occupied by me, as I wish then to terminate any tenancy or right in you to occupy said house after that time. June 7, 1870.'

" On the 12th of July, no further rent having been paid, the defendant, who had been watching for the opportunity, found the house temporarily vacant (the plaintiff's wife having gone up to the street, and the plaintiff's children being about in the yard and one of them on the upper door-step) took peaceable possession of the house, and proceeded to put the plaintiff's furniture out of doors, and fastened the doors, and prevented the plaintiff's wife and children from reoccupying the house. The plaintiff's wife knew of the removal, at once. The plaintiff was away from home, being a travelling peddler. The goods and furniture remained out of doors over night, and the next day were wet by a rain, and damaged, before the plaintiff's wife (the plaintiff being out of town) was able to find a place to put them in. The damage to the goods by being thus put out of the house was ten dollars.

" The plaintiff kept a number of hens, and suffered them to go at large. The defendant occupied the adjoining lot. The plaintiff's hens ran into the defendant's grass and made nests therein, to some extent. A path was made in the grass. The defendant requested the plaintiff to shut up his hens, and threatened to kill them if they were not. The plaintiff neglected and declined to do so. The hens continued to go upon the defendant's land,

when the defendant openly, with a stick, killed the whole lot of
hens, and put them down in the plaintiff's door-yard. The value
of hens thus killed was five dollars."

*C. C. Conant*, for the plaintiff. 1. Although the plaintiff's
wife understood that the notice addressed to John Clark was in-
tended for her husband, it does not follow that he understood it
so ; and if he did not, it was insufficient, and the defendant was
a trespasser in entering the house and removing the furniture.

But even if the notice was sufficient, the facts show that the
defendant removed the furniture without due care, in that he
removed it at a time when the plaintiff's business kept him out
of town and when it was exposed to rain. There is no presump-
tion that the plaintiff's wife was able to take care of it.

2. The defendant was not justified in killing hens trespassing
on his land. *Johnson* v. *Patterson*, 14 Conn. 1. He had his
remedy at law for the trespass. 3 Bl. Com. 211. If a lawful
fence will not avert the incursions of tame winged animals, pro-
tection is to be sought from the legislature. The plaintiff's
silence or inaction raises no presumption of an assent on his part
to the slaughter. No license to do an unlawful act can be im-
plied.

*W. S. B. Hopkins*, for the defendant. 1. The defendant was
justified in ejecting the plaintiff's family and furniture, if the
notice to quit was good. *Meader* v. *Stone*, 7 Met. 147. *Curtis*
v. *Galvin*, 1 Allen, 215. Taylor Landl. & Ten. § 523. The
facts show that it was good, unless the misnomer of the tenant
vitiates it. The misnomer does not vitiate it, especially as it does
not appear that he was misled. Taylor Landl. & Ten. §§ 481,
483, 484, and notes, and cases cited.

2. The law would not authorize killing another's cattle *damage
feasant*. They may be impounded; and they can be fenced
against. But in the nature of things the rule does not apply to
hens. They cannot be impounded, or fenced against except by
such fences as the law does not require a man to maintain; and
they are capable of great mischief. Tort against their owner is
not an adequate remedy, if he is without property ; and although
the tort is in the nature of a nuisance, it cannot be enjoined or

abated by the courts. If then a person aggrieved by repeated acts of depredation by an impecunious neighbor's hens has no right to kill them after due notice, he is without an adequate remedy. It is the notice, and the subsequent conduct of the owner of the hens in wilfully or negligently permitting them to do damage to another's property, that justifies the killing. The case at bar shows repeated acts of damage after notice; and also that the defendant killed the hens openly and delivered their bodies to the plaintiff. It even seems a licensed killing.

AMES, J. 1. The notice to quit was sufficient and lawful, both in substance and in the mode of service. There was no uncertainty as to the party from whom it emanated or the tenement to which it applied, and there could have been no doubt that it was meant for the family occupying that tenement. The mistake in the christian name of the tenant was therefore of no importance; and as on account of his absence the notification could not be delivered to him personally, it was properly served by leaving it at his dwelling-house, in the hands of his wife. *Doe* v. *Spiller,* 6 Esp. 70. *Jones* v. *Marsh,* 4 T. R. 464. *Blish* v. *Harlow,* 15 Gray, 316. *Walker* v. *Sharpe,* 103 Mass. 154.

As the estate of the tenant in the premises had been regularly terminated, and ample time and opportunity had been allowed him for the removal of his furniture, he has no ground of complaint as to the manner in which the defendant took possession. *Meader* v. *Stone,* 7 Met. 147. *Curtis* v. *Galvin,* 1 Allen, 215.

2. But the act of killing the plaintiff's hens was without legal justification. It is admitted that a landowner has no right to kill his neighbor's cattle when found trespassing, but must content himself with his legal remedies, of impounding, or bringing a suit at law. The destruction of valuable property is not necessary to the protection of his rights. And this rule applies as well to feathered animals not *feræ naturæ,* as to larger and more valuable animals. Animals fully reclaimed and used for burden, husbandry or food, are property of intrinsic value, and as such are under legal protection. *Blair* v. *Forehand,* 100 Mass. 136, 140. The notice given of his intention to kill them would be a mere threat to do an illegal act, and would not vary the case. It has

been decided in Connecticut, that the poisoning of a man's hens, after complaint of repeated trespasses, and warning of an intent to kill them, was a wrong for which an action would lie, and we concur with the reasoning of the court in that decision. *Johnson v. Patterson*, 14 Conn. 1. ◆

*Judgment for the plaintiff for $5, and interest.*