(Decided 29th June, 1880.)

---

J. BERRY TURNER and GEORGE W. STODDARD *vs.* ISRAEL HOLTZMAN.

*Right to travel on Public Streets—Stage coaches—Right to use Public Highways defined—Right to abate public Nuisance— When it may be done by Private individuals—Deputy Sheriff—Right of Sheriff or his Deputy to abate public Nuisance in the Highway—Office of Deputy Sheriff considered, and his powers, &c.*

Persons have a right to travel on public streets and roads, stopping only for necessary purposes, and then only for a reasonable time.

Stage coaches may stop to set down and take up passengers, as this is necessary for the public convenience; but this must be done in a reasonable time.

A person travelling on the highway must do so in such a way as not unnecessarily or unreasonably to impede the exercise of the same

Turner and Stoddard *vs.* Holtzman.

right by others; and if he does not exercise this right in a reasonable manner, he is guilty of a nuisance.

There can be no doubt whatever, that any person whose rights are injured or interfered with by a public nuisance, may abate it, provided its abatement does not involve a breach of the peace.

The control over the grounds where a camp-meeting is being held, and over the road leading from the entrance to the place of meeting to the public road, with the right to keep the entrance and the private road unobstructed, includes the right to keep the public highway immediately in front of said entrance clear, so that vehicles may be able to enter and leave it. And this right may be exercised by private individuals having such control.

A deputy sheriff in this State is a common law officer, and not required to take any oath as a qualification to act as such.

A person appointed in writing by the sheriff to act as deputy sheriff, possesses authority such as the sheriff himself may exercise.

The sheriff or his deputy may abate a public nuisance in a public highway.

In an action for assault, against a person who had been authorized in writing by the sheriff to act as his deputy, at a camp-meeting, and his assistant, brought by the driver of a public coach, it was HELD:

1st. That the defendant, as deputy sheriff, had the lawful authority to remove the coach of the plaintiff, when he found it obstructing the public highway, and preventing other parties, who had the right to use the same, from travelling upon it, and to remove the plaintiff with it if he did not choose to leave his seat, and to arrest him if he should resist him in its removal.

2nd. That he also had the right to call to his assistance the other defendant, and such other persons as he might deem necessary in effecting the abatement of the nuisance thus caused and maintained by the plaintiff.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff asked the following instructions:

Turner and Stoddard *vs.* Holtzman.

1. That there is no evidence in the case that the defendants were deputy sheriffs, or held any official position whereby they had authority or right to make arrests, or do any act which any private citizen might not lawfully do.

2. That there is no evidence in the case that the plaintiff was guilty of felony, or any unlawful act which could justify the defendants in arresting him, taking him into custody, or by force or against his will removing him from the position he chose to occupy, and if they find from the evidence that they did so arrest him, take him into custody or move him, the plaintiff is entitled to recover, and their verdict will be for the plaintiff.

3. That if the jury are satisfied from the evidence that the defendants, on the pretext that they were deputy sheriffs or officers of the law, interfered with the plaintiff in the peaceful prosecution of his business, and removed him against his will and efforts to prevent it, from the place selected by him or assigned by his employer for such prosecution of his business, then such interference and involuntary removal was an illegal arrest and taking into custody, for which the plaintiff is entitled to recover, and their verdict will be for the plaintiff.

4. That if the jury shall find a verdict for the plaintiff, they are at liberty to take into consideration all the circumstances of the case, and award such damages as will not only compensate the plaintiff for the wrong and indignity he had sustained in consequence of the defendants' wrongful acts, but may also award exemplary or punitive damages as a punishment to the defendants for such wrongful acts.

And the defendants offered fourteen prayers, which are not inserted here as the same were not passed upon by this Court.

The Court (DOBBIN, J.,) granted the prayers of the plaintiff and rejected the prayers of the defendants, except the first and twelfth which were granted, and gave the

following instructions to the jury in lieu of the sixth, seventh, eighth, ninth, tenth and eleventh prayers of the defendants:

If the jury shall find from the evidence that a camp-meeting was being held on the occasion in question, and that the defendants were appointed the managers thereof, and that the place of holding the said camp-meeting was alongside of a public highway, with an entrance from said highway into said camp ground, and that the use of said camp ground required that the said highway, at said entrance, should be kept from obstruction by vehicles remaining thereon for an unreasonable time, or for a purpose other than public travel, or to take up and sit down passengers in the ordinary course of public travel, and if they shall further find that the plaintiff, being the driver of a large omnibus, placed the same near the said entrance, so as to obstruct in any of the respects above mentioned, the said entrance, and the use of the highway adjacent thereto, then the said omnibus so placed, constituted a nuisance, and the defendants were lawfully entitled to remove the same, provided the same could be done without a breach of the peace; that the use of physical force contrary to the will of another then present, who may resist such force by opposing force, is a breach of the peace on the part of the one so using force, and if the jury shall find that the plaintiff's omnibus was taken from him by the defendants, or either of them, by direction of the other, he, the said plaintiff, being present, thereupon protesting against such removal, with no power to prevent the same, except by force on his part, then such removal was unlawful, and the plaintiff is entitled to recover.

But under this instruction, the defendants are responsible for their own acts, and not for the acts of others, who acted on their own motion, and not at the instigation or by direction of, or in concert with, the defendants.

The defendants excepted and the verdict being against them, filed a motion in arrest of judgment, which was

overruled by the Court and judgment was rendered in accordance with the verdict. The defendants appealed.

The cause was argued before BARTOL, C. J., BRENT, GRASON, MILLER and ROBINSON, J.

*George G. Hooper* and *Albert Ritchie*, for the appellants.

*Henry Stockbridge*, for the appellee.

GRASON, J., delivered the opinion of the Court. ·

The declaration in this case contains three counts, the first of which alleges that the appellants assaulted and beat the appellee and took him into custody, and held him under duress and gave him into the custody of an officer of the law, or one unlawfully and improperly claiming to be an officer of the law, and unjustly and maliciously obstructed him in the prosecution of his lawful business, and prevented him from pursuing the same to his great loss.

The second count charges that the appellants maliciously and falsely assumed to be deputy sheriffs, or officers of the law, and by virtue of such wrongful, malicious and false assumption and claim, took the appellee into custody and detained him and prevented him from prosecuting his lawful and proper business, to his great loss and injury.

The third count avers that the appellants wrongfully. maliciously and wilfully conspired and combined to injure the appellee in the prosecution of his lawful business, and to prevent him from pursuing the same, and in pursuance of such unlawful and malicious combination and conspiracy, arrested the appellee and held him under duress and in custody for a long space of time, and prevented him from pursuing his lawful business, &c.

The Superior Court of Baltimore City, in which this case was tried, granted the four prayers of the appellee

and the first and twelfth of the appellants, but rejected the second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, thirteenth and fourteenth prayers of the appellants, and gave an instruction of its own in lieu of the appellants' sixth, seventh, eighth, ninth, tenth and eleventh prayers. The appellants excepted to the granting of the appellee's prayers, and to the rejection of all of their own prayers, which were rejected, as also to the instruction given to the jury by the Superior Court in lieu of their sixth, seventh, eighth, ninth, tenth and eleventh prayers, and the verdict being against them they took this appeal, after having interposed a motion in arrest of judgment, which was overruled.

The facts appearing in proof are substantially as follows: In August, 1878, there was a camp-meeting on the land of Mr. Lazear, in Baltimore County, he having granted permission to the managers to hold the meeting on his land, upon condition that no public conveyances should be permitted to discharge or take up passengers at the entrance to the grounds, which was opposite and near to Mr. Lazear's dwelling house, and that none but *private* conveyances should enter and leave the grounds at that entrance. This condition was imposed because of serious inconvenience and annoyance which he and his family had suffered from public conveyances, their drivers and passengers, during previous camp-meetings at the same place. An entrance for passengers by public conveyances was, therefore, arranged at a place further down the road, at a greater distance from Mr. Lazear's house, and where the road was much wider than at the entrance nearer his house. Mr. Turner, one of the appellants, was chief manager of the meeting, and held in his possession written papers signed by the sheriff of Baltimore County; one appointing him deputy sheriff at said camp-meeting during its continuance, with power to make arrests for any violations of law, and the other empowering him to appoint special officers

for the preservation of order at, and in the vicinity of Summerfield camp-meeting ground, with full power to make arrests for any violation of law. He wore a badge of deputy sheriff, as also a badge as chief manager. Stoddard was also one of the managers of the camp-meeting, and was appointed a special officer by Turner, and wore the badge of deputy sheriff. During the meeting and on Sunday, the coaches of McFarland were transporting passengers for him between Baltimore City and the place of meeting, and on the morning of Sunday began to discharge their passengers at the entrance to the camp-meeting, which was forbidden to passengers by such conveyances; and the persons who were in charge of them put up on Lazear's land a sign directing attention to McFarland's coaches, and also placed steps for their passengers to pass over Lazear's fence into the grounds where the meeting was held. Lazear insisted upon the steps and sign being removed by the persons who had placed them there, but they refused to remove them, when they were at length removed by one of the policemen from Baltimore City. McFarland's agent and drivers were also remonstrated with by Lazear and one or more of the managers of the meeting about bringing their passengers to this particular entrance, without effect, as they still continued to stop their coaches at this entrance and to set down and take in passengers at that point. The public road opposite this entrance is narrow, and the track of the Powhatan horse railroad occupies part of the bed of the road, leaving between fifteen and sixteen feet between the end of the cross-ties and the line of the road next the fence. The track of the railroad is raised about a foot above the level of the public road, and there is a ditch or gully between the fence and the road. Later in the day a six-horse omnibus, about twenty feet long and capable of carrying thirty-five or forty passengers, belonging to McFarland, and driven by the appellee, after setting down

passengers at the entrance for private carriages, passed up the road a short distance, and after a time came down again and stopped a short distance above the entrance.

Finding that this omnibus, thus standing in the road, was in the way of other vehicles, coming to and returning from the meeting and passing along the road, and obstructing their passage, the appellee, its driver, was ordered to move down the road. He then drove down and halted his horses so near the entrance into the grounds as to obstruct vehicles passing into and out of them. When the drivers of other conveyances, carrying passengers for pay, saw this omnibus standing at this entrance, they also drove up to the same place, and the road, in consequence, was so blocked up that there was not room left for the passage of carriages between the vehicles, so remaining on the road, and the railroad track, and the entrance to the meeting was so obstructed that carriages could neither enter nor leave the grounds on which the meeting was held, and the road leading from the entrance to the meeting also became blocked up. The appellee was requested to move, and he replied that he would move when he got a load. This request was made several times, and was met with the same reply. He was given time and assisted to get a load, and when it was obtained, he transferred it to another of McFarland's coaches, which came alongside to receive it. This was done three times. He was again and again requested to move his coach, and replied that he would not move unless ordered by Watkins, McFarland's agent. The managers then applied to the agent, and he referred them to the appellee. After the lapse of some time, while Turner was talking to some one, Stoddard got up on the hub of the wheel and said to appellee, "Is., why don't you move?" and then got down. During the time he was making this remark to the appellee, Mr. Haslup and another person attempted to move the coach by taking hold of the leaders and

endeavoring to lead them off, but the appellee put his foot on the brake, and thus prevented the coach from being moved. Haslup then suggested that the reins of the leaders should be unfastened, and they were unfastened by him and some one else. So soon as this was done, the appellee removed his foot from the brake and loosened the reins of the other horses, and thereupon the coach at once started down hill, got towards the centre of the road, ran into a wagon, and was likely to collide with others, when Stoddard seized the wheel horse and managed to stop its further progress. He then fastened the reins of the leaders and asked Turner if he wished the coach moved, who replied that he did; and thereupon Stoddard mounted to the box beside the appellee, took the reins, which were hanging loose, put his foot on the brake, and drove down the road as far as the entrance assigned for passengers brought by public conveyances. There he left the coach and horses with the appellee, who during the whole time had been sitting quietly and passively on the driver's seat. Some of the witnesses for the appellee state, that when Stoddard got on the coach, he said to the appellee " I arrest you," and that he pushed the appellee's foot off the brake. Other witnesses deny that such a remark was made, or that the driver's foot was on the brake at all when Stoddard took a seat beside him. Stoddard swears that he said nothing about arresting the driver, that he did not touch him, unless some part of his person may have come in contact with him in sitting beside him ; and the appellee, himself, swears that Stoddard did not push his foot off the brake, but that he had taken it off himself. He also swears that he asked Stoddard when he got up beside him, whether he got up as George Stoddard or as a deputy sheriff, but does not state that Stoddard made any reply to the question. Stoddard further swears that he did not arrest the appellee, and that the only thing he did say about arrest was

after he had driven the coach down the hill, when some one told the appellee to drive back to the entrance, and that then he said "if he does I will arrest him." The proof shows, that for a long time before the coach was removed, it had stood near the entrance, and caused the obstruction in the public road, which prevented other vehicles from passing, and the road consequently became blocked.

The law in regard to the use of public highways and streets, has been clearly and definitely settled by numerous decisions in England, as well as in this country. Persons have a right to travel over public streets and roads, stopping only for necessary purposes, and then only for a reasonable time. Stage coaches may stop to set down and take up passengers, as this is necessary for the public convenience; but this must be done in a reasonable time. A person travelling on the highway must do so in such a way as not unnecessarily or unreasonably to impede the exercise of the same right by others; and if he does not exercise this right in a reasonable manner, he is guilty of a nuisance. *Rex vs. Cross*, 3 *Camp.*, 226; *Rex vs. Jones*, 3 *Camp.*, 230; *The People vs. Cunningham*, 1 *Denio*, 524; *Wood on Nuisances*, sec. 529.

The proof in this case clearly shows that the coach of the appellee, by remaining in the highway, under the circumstances as testified to by nearly all the witnesses on both sides, obstructed the travel over it for an unreasonable time, and was a public nuisance.

Without stopping to inquire whether any one, whose rights are not injured or interfered with, by a public nuisance may abate it, about which there is some conflict in the decisions, there can be no doubt whatever that any person whose rights are injured or interfered with, may abate it, provided its abatement does not involve a breach of the peace. It is unnecessary to cite authorities in support of a proposition so plain and well settled. Both of

the appellants were managers of the camp-meeting and with the other managers had control over the grounds where the meeting was held, and over the entrance to said grounds and the road leading from the entrance to the place of meeting, with the right to keep the entrance and the private road unobstructed, and this included the right to keep the public highway immediately in front of said entrance clear so that vehicles might be able to enter and leave it. This was rendered impossible by the coach of the appellee remaining for a long time so near the entrance as to prevent the ingress and egress of vehicles into and out of the meeting grounds, and to cause the public highway to be so blocked as to prevent the passing and repassing of carriages over it. Throughout the whole time during which this obstruction lasted the appellants and others, having the control of the grounds and the meeting, acted with the utmost forbearance and prudence. They made appeals to the appellee, as well as to others who had the charge and superintendence of this coach, to remove it from the place where it was standing; nor did any one attempt to remove it until all efforts to induce the appellee, the driver, and the agents, having the superintendence of it, to move it, had failed, nor did either of the appellants interfere with the coach until the reins of the horses in the lead had been unfastened by other persons of their own accord, and the appellee had slackened the reins of the other horses and let up the brake; and the coach had, in consequence, started down the hill; had run into one wagon and there was imminent danger of serious damage being done to others and to their occupants. Then it was that Stoddard succeeded in stopping the coach; and, having asked Turner if he wished the coach moved, who replied " yes," fastened the reins, mounted to the seat beside the appellee, took the reins, and quietly and safely drove down the hill to the entrance assigned for passengers brought by public conveyances, and there left the

coach, the appellee in the meantime sitting quietly and pas-
sively in his seat.    There was testimony in the case, given
by witnesses for the appellants as well as by some of
the witnesses for the appellee, and also by the appellee
himself, tending to prove these facts, and if found to be
true by the jury, the appellee was not entitled to recover,
even if the coach was removed by the appellants as pri-
vate individuals.

But the proof shows that Turner, one of the appellants,
acted not only as a manager of the meeting, but was also
a deputy sheriff of Baltimore County, duly appointed by
writing by the sheriff of that county.    The Court below
instructed the jury that there was no evidence that the
appellants were deputy sheriffs, or held any official posi-
tion whereby they had authority or right to make arrests,
or do any act which any private citizen might not lawfully
do ; and it was contended in argument in this Court that
the appellants were not lawfully deputy sheriffs, because
they had not taken the oath of office as such.    The office
of under or deputy sheriff is a common law office.    No
such office has been created either by the Constitution or
statute law of this State.    A deputy sheriff, in this State,
is, therefore, still a common law officer and not required
to take any oath as a qualification to act as such, unless
required to do so by the common law.    8 *Bacon's Abr.*, 671.
Deputy sheriffs were first required to be sworn by Act of
Parliament of 27 Eliz., ch. 12, and afterwards by 3 George
1, ch. 15.    But these statutes are not in force in this
State and are to be found in *Kilty's British Statutes*
classed among those statutes which were found not to be
applicable in this State.    Turner, then at the time of the
alleged assault and arrest of the appellee, was a deputy
sheriff of Baltimore County, duly appointed and possess-
ing authority such as the sheriff himself could exercise.
8 *Bacon's Abr.*, 675.

There can be no doubt that the sheriff has the power of
keeping the peace within his county, 8 *Bacon's Abr.*, 689,

and to raise the *posse comitatus* to aid him, when necessary in executing his office. We think it equally clear that the sheriff or his deputy may abate a public nuisance in a public highway ; and that Turner, as deputy sheriff, had the lawful authority to remove the coach of the appellee, when he found it obstructing the public highway and preventing other parties, who had the right to use the same, from travelling upon it, and to remove the appellee with it, if he did not chose to leave his seat, or to arrest him if he should resist him in its removal. He also had the right to call to his assistance the other appellant, Stoddard, and such other persons as he might deem necessary in effecting the abatement of this nuisance thus caused and maintained by the appellee.

It follows from these views that the Court below erred in granting the four prayers of the appellee and in the instruction given to the jury in lieu of the appellants' sixth, seventh, eighth, ninth, tenth and eleventh prayers, which were refused. All the evidence shows conclusively that the coach of the appellee constituted a public nuisance in the public highway, and Turner, as deputy sheriff of Baltimore County, had the lawful authority to remove it, as the evidence shows it was removed, and to call Stoddard to his assistance in removing it, and to remove the appellee with it, if he chose to remain upon, instead of leaving it, and to arrest him if he attempted to prevent its removal. All the evidence shows that the appellants were fully justified in all they did in abating the nuisance, and, therefore, the judgment appealed from will be reversed without granting a new trial. It is therefore unnecessary to pass upon the prayers offered by the appellants and rejected by the Court below.

*Judgment reversed.*

(Decided 29th June, 1880.)