UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

BROOKE WOMACK,
                    *Plaintiff,*

          and

TONYA WOMACK; CARL WOMACK,
          *Plaintiffs-Appellees,*

          v.

TIERCO MARYLAND, INCORPORATED,
d/b/a Adventure World,
          *Defendant-Appellant,*

          and

PRINCE GEORGE'S COUNTY,
MARYLAND; PRINCE GEORGE'S
COUNTY POLICE DEPARTMENT,
                    *Defendants.*

No. 01-1947

BROOKE WOMACK,
                                    *Plaintiff,*

              and

TONYA WOMACK; CARL WOMACK,
              *Plaintiffs-Appellants,*

              v.

TIERCO MARYLAND, INCORPORATED,
d/b/a Adventure World,
              *Defendant-Appellee,*

              and                                    No. 01-1984

PRINCE GEORGE'S COUNTY,
MARYLAND; PRINCE GEORGE'S
COUNTY POLICE DEPARTMENT,
                                    *Defendants.*

Appeals from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, District Judge;
William G. Connelly, Magistrate Judge.
(CA-99-2130-DKC)

Argued: April 3, 2002

Decided: May 31, 2002

Before MOTZ and TRAXLER, Circuit Judges, and
W. Craig BROADWATER, United States District Judge for the
Northern District of West Virginia, sitting by designation.

_____

Affirmed in part, reversed in part, and remanded by unpublished per
curiam opinion.

_____

**COUNSEL**

**ARGUED:** Robert Wayne Pierce, NILES, BARTON & WILMER, L.L.P., Baltimore, Maryland, for Appellant. Michael Lloyd Smith, CAPITOL LEGAL GROUP, Washington, D.C., for Appellees. **ON BRIEF:** Anthony Graham, Sr., CAPITOL LEGAL GROUP, Washington, D.C., for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Defendant Tierco Maryland, Inc., operator of the Adventure World Amusement Park in Prince George's County, Maryland, appeals the district court's denial of its motion for judgment as a matter of law on plaintiff Tonya Womack's claim for false imprisonment. Tonya Womack and her husband, Carl Womack, cross-appeal the district court's grant of Tierco's motion for judgment as a matter of law on their claims for intentional infliction of emotional distress. We affirm in part, reverse in part, and remand.

I.

This lawsuit arises from an incident occurring on July 3, 1998, when security officers employed at the Adventure World Amusement Park detained and ejected Tonya Womack from the park. On that day, plaintiffs Carl and Tonya Womack took their daughter and her friend to the park. It is undisputed that during the early evening hours of this particularly hot and crowded day, Ms. Womack approached a concession stand and, following a conversation with the employee inside, removed a fruit drink and cup from the stand without paying for the items. The circumstances immediately preceding and following that

act by Ms. Womack, and the appropriateness of the actions taken by park employees in response, are the subjects of this action.

According to Ms. Womack, after waiting in line for a lengthy period, she approached the concession stand window and ordered a fruit drink and a cup of ice. When the female attendant working inside advised Ms. Womack that they were out of ice, Ms. Womack told her that she was dehydrated and asked the attendant to please get her some ice. Without comment, the attendant turned and walked away. Two minutes later, Ms. Womack asked the attendant if she was still helping her and received no response. Mr. Womack then asked for a manager and received no response. Ms. Womack testified that she then stated, to no one in particular, that she was taking the drink and cup to a nearby concession stand to pay for them. At that point, Ms. Womack testified, "one of the guys behind the stand gestured that it was okay." J.A. 50. She then carried the drink and cup to a nearby vendor stand, operated by an independent vendor.

Over Tierco's objections, Ms. Womack testified that when she approached the second vendor, he told her that he could not sell her the fruit drink or cup because he was an independent vendor. However, he told her that he could sell her a cup of ice and a lemonade from his stand. Ms. Womack testified that she then purchased these items from the second vendor, and left the items taken from the first vendor with the second vendor on his word that he would return them for her. This second vendor was not identified and was not called to testify at trial.

Upon leaving the lemonade stand, Ms. Womack testified that she was approached by a security officer who said he understood there was a problem. Ms. Womack advised him that there was not a problem, thanked him, and walked away. At that point, the security officer told Ms. Womack that she had been accused of stealing a drink or a cup from a concession stand. Ms. Womack told the officer that she had paid the lemonade vendor for the items and again walked away. At that point, more security officers approached Ms. Womack and informed her that she had been accused of stealing and that she needed to go with them. By this time, Mr. Womack had approached the group and began speaking with the security officers while Ms. Womack walked to a nearby playground with the children. Ms.

Womack then returned to where the officers were and attempted to give them money if they would leave her and her family alone. According to her testimony, she was instead handcuffed without provocation or need. She testified that she then saw the attendant in the first concession stand and begged her to "tell the truth," J.A. 61, but was taken from the scene through the park in handcuffs. Ms. Womack testified that the security officers continuously threatened her during the walk to the security office, lifting her up by the handcuffs and at one point tightening the handcuffs to hurt her in retaliation for her request that they be loosened. Mr. Womack offered a similar account of the incident.

The female attendant in the first concession stand, Ms. Viola Lee, and the other park employees involved in the incident offered a much different account of the events that day. Ms. Lee testified that Ms. Womack approached her concession stand that evening, demanding to be served out of turn because she was hot. When Ms. Lee refused to take Ms. Womack out of turn, Ms. Womack grabbed a bottled fruit drink on display and a souvenir cup and headed towards a nearby vendor, where she paused briefly before walking away. In accordance with park policy, Ms. Lee notified a manager to contact security and followed Ms. Womack so that she could identify her for the officers.

According to Ms. Lee and the other park employees, Ms. Womack became aggressive and hostile when security attempted to speak with her about the removal of the items from the first concession stand, cursing at the officers in the presence of other patrons and children in the nearby play area. Ms. Womack claimed to have paid for the items, which were still in her possession, and accused Ms. Lee of lying about the incident. This aggressive behavior, the park employees testified, culminated in Ms. Womack lunging at Ms. Lee as if to hit her. The security officers then stepped between the women to protect Ms. Lee and placed Ms. Womack in handcuffs. Ms. Womack was then immediately removed to the park security office, per park procedure, in order to terminate the disruption as quickly as possible and minimize any embarrassment. At the security office, Ms. Womack was asked to sign a "Trespass Letter," notifying her that she was barred from entering the Adventure World property for life, and then escorted to the park exit.

The Womacks subsequently filed this lawsuit against Tierco, alleging claims for assault, battery, false arrest, false imprisonment, and intentional infliction of emotional distress.* The district court, having dismissed all claims for assault, false arrest, and intentional infliction of emotional distress by the conclusion of the trial, submitted the case to the jury solely on the claims for battery and false imprisonment. The jury returned a verdict in favor of Ms. Womack on the false imprisonment claim only and awarded her $2,000 in lost wages and $73,000 for noneconomic losses. In all other respects, the jury returned a verdict for Tierco. Tierco's motions for judgment as a matter of law and for a new trial on the false imprisonment claim were subsequently denied by the district court. Tierco now appeals from the jury's verdict for Ms. Womack on the false imprisonment claim. Ms. Womack cross-appeals the district court's dismissal of her claim for intentional infliction of emotional distress.

## II.

### A.

We begin with Tierco's challenges to the jury instructions regarding Ms. Womack's false imprisonment claim. The district court instructed the jury as follows:

> False imprisonment . . . is the intentional restriction of the freedom of movement of a person who is aware of the restriction and who does not consent. A person is not responsible for false imprisonment if he had a right to restrict the plaintiff's movement. Failure to conduct an adequate investigation may destroy this defense. A person is not responsible for false imprisonment if he had a privilege to arrest without a warrant, and a person has such a privilege if the person was present or in view when the other commit-

---

*The Womacks also brought a civil rights action under 42 U.S.C.A. § 1983 (West Supp. 2001), against Prince George's County and Prince George's County Police Department. Prince George's County removed the case to federal court, but the County and its Police Department were subsequently dismissed from the case. The trial against Tierco proceeded under the court's supplemental jurisdiction.

ted a misdemeanor amounting to a breach of the peace and immediately arrested the other for that offense.

. . .

A merchant or his employee who detained a person for investigation is not responsible for false imprisonment if he had probable cause to believe that the person committed the crime of theft.

J.A. 521-22.

We review a district court's jury instructions for abuse of discretion. *See United States v. Helem*, 186 F.3d 449, 454 (4th Cir. 1999). This court will reverse a judgment "for error in jury instructions only if the error is determined to have been prejudicial, based on a review of the record as a whole." *Abraham v. County of Greenville, South Carolina*, 237 F.3d 386, 393 (4th Cir. 2001) (internal quotation marks omitted).

1.

Tierco first contends that the trial court erred in failing to instruct the jury that the defense of another, as charged for the battery count, is also a defense to a false imprisonment claim. As to the battery count, the district court instructed the jury as follows:

A battery is an intentional touching of a person without that person's consent. . . .

A person is not responsible for battery if he had a right to do what he did. *A person has a right to defend himself, another person and his employer's property so long as he used only such force as was reasonably necessary to protect himself, the other person or his employer's property. A person has the right to protect himself, the other person or his employer's property from actual attacks or threatened harm which he reasonably believes would immediately occur.*

J.A. 520-21 (emphasis added). With regard to the false imprisonment claim, however, the district court did not charge the jury that the defense of persons or property was a defense to the claim.

Tierco is correct that the defense of another is a defense equally applicable to false imprisonment and battery. *See* Restatement (Second) of Torts § 67 & cmt. a; § 76 (1965). Accordingly, the district court erred in not instructing the jury in this defense. However, we will only reverse the judgment if the error was prejudicial, based on a review of the whole record. *See Abraham*, 237 F.3d at 393. Having reviewed the record closely, we are satisfied that the error was prejudicial to Tierco, necessitating a new trial.

According to the undisputed testimony, Ms. Womack was handcuffed and taken from the park area to the security trailer. It is this act of restraint by the security officers which serves as the primary basis for both the false imprisonment claim *and* the battery claim brought by Ms. Womack against Tierco. The dispute is over the provocation for the handcuffing of Ms. Womack by the security officers. Ms. Womack contends that there was no stated basis, other than perhaps for the theft accusation, whereas the park personnel testified that the handcuffing only occurred as a result of Ms. Womack's lunging at Ms. Lee in a threatening manner.

Presented with these conflicting accounts, the jury returned a verdict for Tierco as to the battery claim, but for Ms. Womack as to the false imprisonment claim. Under the circumstances, we believe the trial court's failure to charge the jury that the defense of another, in this case Ms. Lee, is a defense to *both* battery and false imprisonment was prejudicial to Tierco. Accordingly, we reverse the judgment in favor of Ms. Womack and remand for a new trial solely on her claim for false imprisonment.

2.

Tierco also contends that the trial court erred in failing to instruct the jury that the park security officers could use reasonable force to restrain Ms. Womack and eject her from the property once they had instructed her to leave and she refused. *See Vancherie v. Siperly*, 221 A.2d 356, 358-59 (Md. 1966) (applying privilege to use such reason-

able force as a defense to assault and battery claim where there was evidence that plaintiff refused defendant's request to leave the premises); *Maddran v. Mullendore*, 111 A.2d 608, 612 (Md. 1955) (same). This is a correct statement of the law, but we find no error in the district court's refusal to charge it as a defense.

Although there was testimony that the park security officers told Carl Womack that his wife was going to have to leave the park and that *he* refused to cooperate, there was no evidence that Tonya Womack was asked to leave the park before she was handcuffed or that she ever refused to leave the park after being asked to leave. Indeed, the testimony consistently revealed that, once Ms. Womack was taken to the security trailer and the handcuffs were removed, she signed a document barring her from ever returning to the park and was escorted without incident to the exit.

We reject Tierco's contention that Ms. Womack should be charged with knowledge of what the security officers said to her husband or that she could be imprisoned based upon a refusal voiced by him. At a minimum, there must be evidence that Ms. Womack was personally asked to leave and refused to do so or was otherwise made personally aware that her continued presence would be considered a trespass. Because there was no such showing made below, the district court did not abuse its discretion in refusing Tierco's proffered instruction on trespass.

3.

Finally, Tierco contends that the trial court improperly instructed the jury that a defendant's right to restrict a plaintiff's movement, such as that which arises after the defendant observes the commission of a misdemeanor, could be destroyed by the defendant's "[f]ailure to conduct an adequate investigation." J.A. 521. *See Montgomery Ward v. Wilson*, 664 A.2d 916, 923-24 (Md. 1995).

Having reviewed Tierco's contentions and the record, we conclude that the district court did not abuse its discretion in giving this instruction to the jury. We note, however, that in this case the instruction goes to the issue of Tierco's right to restrict Ms. Womack based upon probable cause to believe that she had stolen the drink and cup from

the first vendor and, more particularly, to the issue of whether an adequate investigation into the circumstances of the alleged theft was conducted. Therefore, it appears to have little to do with the issue of the security officers' right to prevent Ms. Womack from harming another person.

### B.

We now turn briefly to Tierco's appeal of the district court's admission of hearsay statements allegedly made by the lemonade vendor to Ms. Womack. According to Ms. Womack, this vendor advised her that the poor service she had received at the park concession stand was common and that, although he could not accept payment for the items removed from the park stand, he would return them for her. The district court allowed Ms. Womack to testify concerning these alleged statements made by the lemonade vendor on the sole basis that the vendor had "apparent authority" to act as an agent for Tierco.

Although the lemonade vendor was located inside the park for the purpose of offering products for sale to the park patrons, it is undisputed that he was an "independent vendor" who simply paid the park a percentage of his sales. As such, the lemonade stand was necessarily subject to some park policies due to its presence inside the gates, but was nonetheless operated as an independent concessionaire. The attendant in the stand was not employed by Tierco, and there was testimony that employees of the independent concessionaires wore different uniforms than the park employees and name badges that did not bear the park's name. The park did not have authority to directly control the independent concessionaire's employees or regulate their schedules. And, Ms. Womack testified that the lemonade vendor told her he was an independent vendor and, therefore, that she could not pay him for the items she had removed from the first concession stand.

### 1.

Federal Rule of Evidence 801(d)(2)(C) allows the admission of "a statement by a person authorized by the party to make a statement concerning the subject." "[A]uthority in the context of 801(d)(2)(C) means 'authority to speak' on a particular subject on behalf of some-

one else." *See Precision Piping & Instruments, Inc. v. E.I. duPont de Nemours & Co.*, 951 F.2d 613, 619 (4th Cir. 1991). Rule 801(d)(2)(D) allows the admission of "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Under Rule 801(d)(2)(D), the party offering the evidence must show that the declarant is an agent of the party-opponent and the scope of that agency. *See United States v. Portsmouth Paving Corp.*, 694 F.2d 312, 321 (4th Cir. 1982).

Having reviewed the testimony, we agree that the district court erred in admitting the lemonade vendor's statements as admissions by a party-opponent under Rule 801(d). There is no evidence that the lemonade vendor was authorized by Tierco to speak on its behalf. And, plaintiffs' evidence was insufficient to establish that the lemonade vendor was an agent or employee of Tierco or that the statements concerned matters within the scope of his agency or employment. *See Precision Piping*, 951 F.2d at 618-620. Accordingly, we hold that the district court abused its discretion in admitting the statements of the independent lemonade vendor as a Rule 801(d) admission by Tierco.

2.

As an alternative, the Womacks assert that we should uphold the admissibility of the hearsay statements made by the lemonade vendor to Ms. Womack because the trial court could have admitted the statements, not for the truth of the matter asserted, but to show that a conversation took place between Ms. Womack and the lemonade vendor and that Ms. Womack relied upon the conversation when she told Tierco's security officers that there was no problem. Tierco asserts that we cannot sustain the trial court's decision on this basis for two reasons. First, to establish that a conversation took place, Ms. Womack did not need to testify as to the precise statements made by the lemonade vendor and, second, even if admissible for this limited purpose, Tierco would have been entitled to an instruction that the evidence was *only* admissible for this limited purpose. *See* Fed. R. Evid. 105 ("When evidence which is admissible . . . for one purpose but not admissible . . . for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.").

During the trial, the statements of the lemonade vendor do appear to have come into evidence both for the truth of the matter asserted, which we have determined to be error, and later to establish what information the officers had gathered for purposes of determining whether probable cause existed to believe a theft had occurred. The district court, however, did not admit the evidence in question with this limited purpose in mind and, therefore, did not consider the propriety of giving a limiting instruction.

Because we reverse the verdict on other grounds, we need not determine whether Tierco was prejudiced by the erroneous admission of the hearsay testimony as an admission by a party-opponent. On remand, this case will be tried solely on Ms. Womack's claim for false imprisonment. We express no opinion as to whether the hearsay statements of the lemonade vendor are admissible for purposes other than their truth, and leave for the district court the determination of what limiting instructions would be appropriate in the event the statements are admitted for such other purposes.

### III.

By cross-appeal, plaintiffs challenge the district court's dismissal of their claims for intentional infliction of emotional distress. To pursue a claim for intentional infliction of emotional distress, plaintiffs were required to establish (1) that the defendants' conduct was "intentional or reckless"; (2) that the defendants' conduct was "extreme and outrageous"; (3) that there was "a causal connection between the wrongful conduct and the emotional distress"; and (4) that "the emotional distress [was] severe." *Thacker v. City of Hyattsville*, 762 A.2d 172, 197 (Md. Ct. Spec. App. 2000); *see Harris v. Jones*, 380 A.2d 611, 613 (Md. 1977).

The Maryland courts have made it clear that viable claims for intentional infliction of emotional distress will be sparingly found. *See Borchers v. Hrychuk*, 727 A.2d 388, 392 (Md. Ct. Spec. App. 1999). In determining whether defendants' alleged conduct was extreme and outrageous, the court must find that the conduct was "so outrageous that it goes beyond all possible bounds of decency, and is regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 392 (internal quotation marks and alterations omitted).

Also, "[i]n order for distress to be sufficiently severe to state a claim for intentional infliction of emotional distress, 'the plaintiff [must] show that he suffered a *severely* disabling emotional response to the defendant's conduct,' and that the distress was so severe that 'no reasonable man could be expected to endure it.'" *Thacker*, 762 A.2d at 197 (quoting *Harris*, 380 A.2d at 611).

At the close of the case, the district court granted Tierco's motion for judgment as a matter of law as to the Womacks' claims for intentional infliction of emotional distress, concluding that the security officers' conduct was not "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." J.A. 508. Having reviewed the transcript, we find no error in this determination and affirm the district court's dismissal of these claims in their entirety.

## IV.

In sum, we reverse the district court's denial of the motion for judgment as a matter of law on the false imprisonment claim because Tierco was entitled to an instruction that the defense of others is a defense to false imprisonment. In all other respects, we affirm the district court's denial of the motions for judgment as a matter of law.

*AFFIRMED IN PART, REVERSED*
*IN PART, AND REMANDED*